C.W. OVER & SONS, INC., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 98–741C.

United States Court of Federal Claims.

Dec. 10, 1999.

Francis R. Laws, Baltimore, MD, for plaintiff.

Phyllis Jo Baunach, Washington, DC, with whom was Acting Assistant Attorney General David W. Ogden, for defendant.

## OPINION

MILLER, Judge.

This contract case is before the court on the parties' cross-motions for summary judgment as to Count III of the complaint. The issues to be decided are (1) whether the doctrine of the law of the case requires the court to grant plaintiff's motion, (2) whether new work orders styled as modifications to delivery orders retain their character as modifications, and (3) whether there was a mutual mistake of fact which warrants contract reformation. Argument is deemed unnecessary.

### FACTS

The facts material to the cross-motions are undisputed. On January 14, 1994, the Maryland Procurement Office of the National Security Agency (the "NSA") awarded Contract MDA904–94–D–2502 to C.W. Over & Sons, Inc. ("plaintiff"). This firm fixed-price contract was an indefinite delivery, indefinite quantity contract providing for construction and renovation work at Fort George G. Meade, Maryland. The duration of the con-

tract was one year with four one-year options. All but the final option year of the contract were exercised. Only those facts pertinent to the pending cross-motions are reviewed.[1]

### 1. *Orders and pricing*

The contract establishes a formula to set the price of work ordered by the NSA. The contract incorporates by reference a Unit Price Book ("UPB") to determine the costs of each potential undertaking. A UPB is a comprehensive register of individual construction tasks that have been pre-priced by the Government. The price of a particular task is established by cross-referencing the task performed with the UPB cost entry and multiplying by the relevant coefficient.[2] The coefficients thus operate as multipliers in calculating the price that plaintiff is entitled to charge for work performed. At the outset plaintiff was required to provide the NSA with three fixed coefficients—for onsite work during normal working hours, onsite work during other than normal working hours (overtime), and offsite work—for each year of the contract. Although the coefficients changed for each successive year of the contract to account for differing economic conditions, they remained fixed during the year for which each was designated. Plaintiff's proposed coefficients were incorporated into the contract upon award.

The contract also establishes a procedure for ordering new work. The two vehicles employed for this purpose were (1) delivery orders and (2) modifications to delivery orders. Delivery orders were used to initiate separate projects within the contract. Section H.21 of the contract details the process for origination of delivery orders. Specifically, that section mandates that delivery orders reference section H.21 and be issued on DD Form 1155, "Order for Supplies or Services." In contrast, modifications to delivery orders were used within the context of a specific delivery order to change the scope or content

of work previously ordered. These orders were executed on Standard Form 30 ("SF 30"). Unlike its counterpart for delivery orders, SF 30 made no reference to section H.21. SF 30 also explicitly noted the applicability of Federal Acquisition Regulations ("FAR") section 52.243–4, 48 C.F.R. § 52.243–4 (1994), titled "Changes," to its content. FAR § 52.243–4(e) states:

> The Contractor must assert its right to an adjustment under this clause within 30 days after (1) receipt of a written change order under paragraph (a) of this clause or (2) the furnishing of a written notice under paragraph (b) of this clause, by submitting to the Contracting Officer a written statement describing the general nature and amount of proposal, unless this period is extended by the Government.

Although the contract did establish a procedure for ordering new work, it did not establish a specific process by which the parties would agree on what work was necessary for a particular project. In practice the parties always followed the same basic negotiating steps. After the NSA had identified its project requirements, plaintiff would prepare a proposal that included a listing of the line items necessary for performance. Plaintiff would cross-reference the required line items with the UPB, multiply by the relevant coefficient, and add them to obtain a total price for the project. As was its custom, the NSA would concurrently prepare its own independent cost estimate. When plaintiff's proposal was received, the NSA would review it against its own estimate. The parties would then meet to discuss any discrepancies or outstanding technical issues. Any changes agreed to would be incorporated into plaintiff's proposal. Thereafter, the NSA would issue the appropriate work order consistent with the agreed-to terms.

The work orders implicated by Count III of plaintiff's complaint were developed in precisely the manner describe above. After

---

**1.** A more complete rendition of the facts of this case can be found in *C.W. Over & Sons, Inc. v. United States,* 44 Fed.Cl. 18, 20–22 (1999) (order granting in part and denying in part motion for summary judgment).

**2.** Section B.2 of the contract defines a coefficient as "a numerical factor that represents the contractor's direct and indirect costs and profit over and above the fixed prices established in the [UPB]."

the NSA identified its project requirements, plaintiff prepared proposals. This included listing the line items necessary for performance, inserting appropriate coefficients, and establishing total price. The NSA reviewed the proposals and used plaintiff's coefficients in the final work orders. At no time during the negotiation of any work order did plaintiff propose alternatives or protest the use of the coefficients that it had prepared. Consistent with their negotiations, the work orders at issue, which incorporated the coefficients, were drafted as modifications to delivery orders on SF 30.

### 2. Procedural history

On February 20, 1998, plaintiff submitted a certified claim to the contracting officer for costs incurred during the course of performance on the contract. On July 20, 1998, the contracting officer denied this claim in its entirety. Plaintiff filed suit seeking review of that decision pursuant to the Contract Disputes Act, 41 U.S.C.A. § 609(a)(1) (West 1987 & Supp.1999).

In its suit plaintiff raised three independent grounds for recovery. Count I of plaintiff's complaint dealt with whether the contract price, as awarded, included all state sales tax on materials. Count II concerned whether plaintiff's performance of work orders under $2,000.00 was beyond the scope of the contract. In Count III of the complaint, plaintiff challenged the use of coefficients for work orders performed during the option years, charging that the NSA often applied the previous year's coefficient rather than the current year's. Specifically, plaintiff sought an equitable adjustment in the amount of $6,202.74 under the changes clause of the contract for application of the wrong coefficient on delivery orders 0168, 0198, 0192, 0204, 0193, 0207, 0232, and 0135.

On January 4, 1999, defendant responded to the complaint with a motion for summary judgment. That motion was granted with respect to Count I, but otherwise denied. *See C.W. Over & Sons, Inc. v. United States,* 44 Fed.Cl. 18 (1999) (order granting in part and denying in part motion for summary judgment). As to Count III, defendant argued that it had, in fact, applied the correct coefficients. The court rejected this contention, *see id.* at 31–32, inviting plaintiff to move for summary judgment.

On July 7, 1999, plaintiff moved for partial summary judgment with respect to Count III of its complaint. In its motion plaintiff argues that, having ruled that the new work orders were properly viewed as delivery orders, not as modifications to delivery orders, and that the NSA applied expired coefficients, the doctrine of the law of the case requires the court to hold in its favor. Defendant opposed and cross-moved for partial summary judgment[3] arguing that plaintiff misinterprets the court's ruling on defendant's prior motion for summary judgment and that, in any event, plaintiff is foreclosed from recouping its losses by FAR § 52.243–4(e). Plaintiff's response countered defendant's invocation of FAR § 52.243–4(e) by raising the equitable defense of mutual mistake of fact. Defendant's reply appended the December 15, 1998 affidavit of Contracting Officer Robert M. DuCharme. Because that document, although part of the earlier summary judgment submissions, had not been furnished on this motion until defendant's final brief, plaintiff was given an additional opportunity to respond.

### DISCUSSION

### 1. Summary judgment standard

When a federal court reviews the sufficiency of the complaint, pursuant to a motion for summary judgment, "its task is necessarily a limited one." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* To this end, the court must accept as true the facts alleged in the complaint, *see Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988), and must construe such facts in the light most favorable to the pleader. *See Henke v.. United States,* 60 F.3d 795, 797 (Fed.Cir.

---

**3.** In its prior motion for summary judgment, defendant argued only that the correct coefficients had been applied and did not raise an issue with respect to FAR § 52.243–4.

1995) (holding court obligated "to draw all reasonable inferences in plaintiff's favor"). The court is not permitted to weigh the evidence or seek to determine the truth of the matter. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). On cross-motions each party bears the burden of demonstrating entitlement to judgment, as well as the absence of issues of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In response to the other's motion, each party must provide evidence that is more than merely colorable. *See id.* at 324, 106 S.Ct. 2548 (noting evidence need not be admissible at trial); *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.,* 731 F.2d 831, 836 (Fed.Cir.1984); *see also Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.,* 853 F.2d 1557, 1560 (Fed.Cir.1988). Evidence may be presented in the form of affidavits by knowledgeable persons. *See Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. However, mere assertions or conclusory allegations are insufficient. *See SRI Int'l v. Matsushita Elec. Corp.,* 775 F.2d 1107, 1116 (Fed.Cir.1985).

### 2. *Law of the case*

■ Plaintiff raises as a preliminary issue that the court, in denying defendant's prior motion for summary judgment as to Count III, already decided that the relevant work orders properly were read as delivery orders, rather than as modifications to existing delivery orders. Absent special circumstances, the law of the case doctrine disfavors the practice of reconsidering what already has been decided. *See, e.g., Mendenhall v. Barber–Greene Co.,* 26 F.3d 1573, 1582 (Fed.Cir. 1994). Invoking the law of the case doctrine, plaintiff directs the court to the final paragraph of its opinion:

> Because the modifications to delivery orders 0168, 0192, 0193, 0198, 0204, 0207, 0232, and 0135 can be viewed only as new work orders, the NSA incorrectly applied expired coefficients. In these circumstances a delivery order has been issued for a subsequent period with altered terms. Plaintiff is not engaging in any pre-existing performance, but, rather, is undertaking a new or related task, which is

being performed during a different time period. Defendant argues unpersuasively that these are not new orders requiring application of the coefficient applicable at the time of performance. This is not a situation in which plaintiff is seeking an adjustment for work that was to be performed within a specific time frame and performance occurred at a later date. Because defendant's interpretation is unreasonable, its motion for summary judgment is denied with regard to Count III of the complaint.

*C.W. Over & Sons,* 44 Fed.Cl. at 32 (footnote omitted).

Assuming that the foregoing represents the "law of the case," itself a doubtful proposition, plaintiff misinterprets its import. Delivery orders and modifications to delivery orders are both vehicles for ordering new work under the contract. The former were used to initiate new projects and the latter, to initiate work in the context of existing projects. New work resulted no matter which vehicle was chosen. In the above-quoted passage, the court merely acknowledged that the relevant orders called for new work, not that the work more properly was characterized as a new project, necessitating a delivery order. Whether new work is best implemented by a delivery order or a modification to a delivery order was determined by the parties during bilateral negotiations. This court expressed no opinion on the wisdom of that choice when considering defendant's prior motion for summary judgment. Furthermore, were it justiciable, such a review would not be appropriate on summary judgment. The court's summary judgment ruling, with respect to Count III, was limited to rejecting defendant's argument that the correct coefficients were applied. Therefore, the law of the case doctrine does not mandate that the court grant plaintiff's motion for partial summary judgment.

### 3. *Effect of FAR*

■ Defendant asserts that FAR § 52.243–4 governs bilateral modifications to delivery orders. That provision requires a dissatisfied contractor to submit a request

for an equitable adjustment within 30 days after the modification is issued. Plaintiff failed to file its claim for equitable adjustment within this period. Accordingly, defendant argues, plaintiff is barred from recovery. Plaintiff does not challenge that interpretation of FAR § 52.243–4(e), but, instead, contends that the issuance of new work is governed exclusively by section H.21 of the contract. As new work orders were processed pursuant to section H.21, rather than as "changes," the argument goes, FAR § 52.243–4 is inapplicable to the fact situation presented.

The work orders at issue were plainly styled as modifications to delivery orders, not as new delivery orders. The most persuasive evidence on point is that the orders were drafted on SF 30. Modifications to delivery orders uniformly were executed on SF 30, whereas new delivery orders were executed on DD Form 1155. SF 30 explicitly noted the applicability of FAR § 52.243–4 to the agreement. Plaintiff does not say how, or why, this court should transform a modification to a delivery order into a delivery order. Thus, it is beyond cavil that the work orders at issue were modifications to delivery orders and cannot be treated as delivery orders. As plaintiff itself proposed the coefficients that it now challenges in the first instance and raised no objection to their use during bilateral negotiations, the court cannot pursue the suggestion that plaintiff was coerced into acceptance by the NSA's superior bargaining position.

As defendant's reply persuasively demonstrates, plaintiff's contention with respect to section H.21 is untenable. Section H.21, entitled "Ordering," states that "[d]elivery orders issued under this provision will cite this clause as authority." The relevant work orders clearly referenced FAR § 52.243–4, but made no mention of section H.21. Section H.21 further states that "[d]elivery orders will be issued on DD Form 1155." However, the work orders in question were all issued on SF 30, not DD Form 1155.[4] Thus section H.21 is not implicated by these orders and

FAR § 52.243–4 controls. Having failed to submit a timely request for an equitable adjustment as required by that section, plaintiff cannot succeed on its claim.

### 4. *Mutual mistake*

■ Plaintiff's final appeal is to the doctrine of mistake, claiming the use of expired coefficients in the modifications constituted a mutual mistake of fact which necessitates reformation of the contract. In order to state a case for mistake, the party seeking reformation must prove four elements:

(1) the parties to the contract were mistaken in their belief regarding a fact;

(2) that mistaken belief constituted a basic assumption underlying the contract;

(3) the mistake had a material effect on the bargain; and

(4) the contract did not put the risk of the mistake on the party seeking reformation.

*Atlas Corp. v. United States,* 895 F.2d 745, 750 (Fed.Cir.1990) (citations omitted).

■ The first shortcoming of plaintiff's contention is that it fails to identify the most modest prerequisite to maintain a mistake claim. As the nomenclature of the legal theory indicates, to proceed the alleged mutual mistake must regard a fact. However, application of the appropriate set of coefficients in a price calculation is strictly a matter of contract interpretation. Plaintiff's contention is only that the parties erred in their interpretation of the contract. No fact is involved. Accordingly, a claim for mutual mistake of fact will not lie.

Assuming the movant had identified a fact for the parties to be mistaken about, the second critical element of a claim for mutual mistake of fact is that the mistaken belief be held by both parties. To avoid the consequences of FAR § 52.243–4(e), plaintiff must establish that its application was not intended by either party when the agreement was reached. If plaintiff were to prove only that the parties were mistaken regarding the set

---

4. Even if the court were to hold that these delivery orders were issued pursuant to section H.21—thereby discounting the dispositive evidence discussed above—plaintiff still has not offered evidence to show why FAR § 52.243–4 would not apply to a document which explicitly calls for its application.

of coefficients used, the court would not be at liberty to write FAR § 52.243–4 out of their agreement. However, plaintiff has not even argued, much less offered evidentiary support for, the proposition that the NSA believed FAR § 52.243–4 was not applicable to modifications to delivery orders. Therefore, the doctrine of mutual mistake affords plaintiff no relief.

### CONCLUSION

Accordingly, based on the foregoing,

**IT IS ORDERED**, as follows:

1. Defendant's motion for partial summary judgment is granted and plaintiff's cross-motion is denied.

2. The parties shall file a joint status report by January 5, 2000, proposing a schedule for trial.