INNOVAIR AVIATION, LIMITED,
Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 96–408C.

United States Court of Federal Claims.

Nov. 25, 2003.

George Miller and Audrey Moog, Hogan & Hartson, Washington D.C., for plaintiff. Ty Cobb, Hogan & Hartson, Denver, CO, for plaintiff.

Sheryl Floyd, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.

### ORDER and OPINION

SMITH, Senior Judge.

In a previous order, this Court, "in an abundance of caution," ordered Plaintiff Innovair to show cause why its case should not be dismissed in light of *Vereda, Ltda. v. United States*, 271 F.3d 1367 (Fed.Cir.2001). Through additional briefs and subsequent oral argument as to this Court's jurisdiction, Plaintiff has succeeded in its proof that this Court may exercise subject matter jurisdiction over Innovair's 5th Amendment takings claim. For the reasons set out below the Court hereby **DENIES** Defendant's Motion to Dismiss for lack of subject matter jurisdiction and **ORDERS** a telephonic status conference for Tuesday, December 16, 2003 to schedule the litigation of the remaining issues.

### FACTS

In the mid 1980s Plaintiff Innovair, a Hong Kong Corporation, partnered with an American company named Basler Turbo Conversions to refit old DC 3 aircraft, converting them into turbo engine planes. Innovair's rights to utilize the conversion technology for profit outside of the United States were set out in a Technology Licencing Agreement (TLA) signed by the two companies. Armed with its TLA, Innovair contracted with Columbia Air in 1988 to refit some aircraft and began working on them, just as the United States Government exposed Columbia's national airline as having ties to the Medellin drug cartel. In addition to seizing the converted aircraft under Innovair's care, on July 16, 1991 the Government seized the TLA itself, ostensibly because its profits could be traced to illegal drug activity. Innovair pursued its ownership rights to the TLA before the U.S. District Court for Arizona, which

held the TLA by way of *in rem* jurisdiction. In the face of infighting between Innovair and its American partner Basler, the U.S. Attorney's office in Arizona began negotiations for the release of the TLA, in return for a cash bond.[1]

On May 21, 1992 Arizona District Judge Broomfield, over Innovair's objections, approved the substitute *res* bond, in the amount of $1,375,000.00, releasing the TLA in favor of non-owner Basler. *See May 21, 1992 Order*, District Judge Broomfield, case no. CIV90–1827–RCB. Pursuing all possible remedies before every tribunal available to it, on July 10, 1996 Innovair filed under the 5th Amendment here in the Court of Federal Claims, invoking this Court's Tucker Act jurisdiction to ensure just compensation for property taken by the U.S. Government. *See* Comp. ¶ 3. Because of ongoing litigation before U.S. District Court for Arizona, this Court stayed the proceedings pending determinations of the TLA's ownership and Innovair's ownership status under the Controlled Substances Act.[2] *See December 3, 1998 Stay Order*. After an eight day trial the district court determined that Innovair was in fact the owner of the TLA, but also an "innocent owner" under the CSA, which, under normal circumstances, would entitle Innovair to the return of its seized property. *See September 22, 1998 Judgment*, Case no. CIV90–1827–RCB.

However, because the TLA was no longer available for return to its owner, Judge Broomfield conceded the TLA was worth more than the cash bond and awarded Innovair a $2,106,206.00 judgment plus interest. *Ibid.* That award was challenged by the Government, and on November 30, 2000, the U.S. Court of Appeals for the 9th Circuit found that, because of the *in rem* nature of the seizure, the District Court had overstepped its jurisdictional authority in awarding more than the substitute *res* bond. *See United*

States v. Basler Turbo and Innovair, 248 F.3d 1173 (9th Cir.2000). The 9th Circuit vacated the judgment, "except to the extent that the court determined (properly) that the value of its interest was at least equal to the amount of the substitute res." *Ibid.* Armed with that language from the appellate court, Innovair returned to this Court, requesting the Court to lift the stay so that the amount of just compensation could be litigated. *See November 28, 2001 Motion to Lift Stay.*

### STANDARD OF REVIEW

The Government has advanced a jurisdictional challenge from the outset of this case, and now invokes the Federal Circuit's *Vereda* decision as controlling the fact pattern presented here. Rule 12(b)(1) of the Rules of the Court of Federal Claims, mirrors its counterpart in the Federal Rules of Civil Procedure, so this Court understands their application similarly. *Wheeler v. United States*, 11 F.3d 156, 157 n. 1 (Fed.Cir.1993). When the jurisdictional competence of the Court of Federal Claims is challenged by the Defendant in a Motion to Dismiss, or even questioned by the Court itself in a Show Cause Order, the Plaintiff carries the burden of proving subject matter jurisdiction exists. *Alder Terrace Inc. v. United States*, 161 F.3d 1372, 1377 (Fed.Cir.1998), (citing *McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)). Nonetheless, the Court must construe all factual allegations in the light most favorable to a Plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). *Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988). Furthermore, the Court must draw all reasonable inferences in favor of the Plaintiff. *Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir.1995). In this posture and indulging all reasonable inferences in the Plaintiff's

---

1. Under the then governing Controlled Substances Act, where seized property is over $500,000.00 in value, the U.S. Attorney's Office, at its discretion, may negotiate a substitute *res* bond so as to secure the Government's interests, where a property might otherwise depreciate in value while frozen. 19 U.S.C. § 1610.

2. Basler and Innovair disputed ownership of certain interests in the TLA before the U.S. District Court, Eastern District of Wisconsin in a case filed September 11, 1991 before District Judge Rudolf Randa. *See* Case no. 2:91–cv–00480–RTR. The determination of Innovair's position as an "innocent owner" for purposes of the CSA was made by the Arizona District Judge Robert Broomfield. *See* Case no. CIV90–1827–RCB.

favor from allegations made in its complaint, filings and oral argument and then casting them against a careful reading of *Vereda*, this Court finds it has subject matter jurisdiction to hear Innovair's 5th Amendment takings claim.

## DISCUSSION

In *Vereda*, the Federal Circuit answered this Court's certified question on interlocutory appeal, finding that, where an interest holder challenges the rightfulness of an *in rem* seizure of airplanes under the Controlled Substances Act after comprehensive administrative review by the administrative agency, the Court of Federal Claims has no Tucker Act jurisdiction to further review the propriety of the forfeiture. Accordingly, *Vereda*'s Plaintiff was barred from bringing a substantive challenge to the seizure and ultimate forfeiture under a takings theory in this Court. The Federal Circuit in *Vereda* relied on the statutory language that a declaration of forfeiture by DEA had the "force and effect of a final decree of a district court", and reasoned that, since this Court is not permitted to review decisions of other tribunals, it was not competent to examine the propriety of the seizure and forfeiture. *Vereda v. United States*, 271 F.3d at 1375, (citing 19 U.S.C. § 1609(b)). The Federal Circuit concluded that this Court did not have the "authority to determine whether the airplane as a whole, which includes Vereda's interest in the airplane, met the criteria for forfeiture." *Ibid.* In *Vereda*, the Plaintiff based its attack on the merits of the plane's forfeiture by the DEA, with incidental invocation of the Court of Federal Claim's taking jurisdiction.

Plaintiff Innovair now brings no such substantive challenge to the Government's July 16, 1991 seizure of the TLA.[3] Instead, Plaintiff alleges that the taking giving rise to this Court's Tucker Act jurisdiction occurred almost ten months later when Arizona District Judge Broomfield approved the release of the TLA pursuant to the substitute *res* bond posted by non-owner Basler. *See March 21, 2003 Brief of Plaintiff* pg. 3. When the Plaintiff first discovered that its TLA had been seized, it initiated a complex series of negotiations and court filings before the pertinent federal district courts, and was eventually determined the rightful, and innocent owner of the TLA, for purposes of preserving its rights to that property under the Controlled Substances Act. *See June 9, 2003 Defendant's Response to Plaintiff's March 21, 2003 Brief,* pg. 4. Unlike the fact pattern in *Vereda*, which the Defendant relies on so heavily in its challenge to this Court's jurisdiction, no successful forfeiture proceeding was ever advanced by the federal government against Innovair. *Ibid.* Plaintiff alleges that after the initial seizure and while district courts were determining the TLA's ownership, the act of transferring the TLA to a third party, pursuant to a court approved substitute *res* bond, was a taking of Innovair's property, vesting this Court with jurisdiction to hear its claim under the 5th Amendment to the U.S. Constitution.

In its briefs filed before this Court, Plaintiff presents determinations from the Arizona District Court and the Court of Appeals for the 9th Circuit that the substitute *res* bond, which gave birth to the release and taking alleged here by Plaintiff, also served to fix the eventual amount of compensation Innovair received for the loss of its TLA.[4] The 9th

---

3. In its complaint, originally filed July 10, 1996, Plaintiff alleges that "the effect of the government's seizure of Innovair's TLA and its transfer to its former partner, Basler was to immediately destroy Innovair's business. . . . . Innovair received no compensation for the loss of its key asset". *See* Comp. ¶ 21. In deference to other litigation that materially effected the legal and factual arguments presented here, this Court suspended this case for just over three years. *See December 3, 1998 Stay Order.* During that time, determinations of law and fact have resulted in refined briefings and oral presentations before this Court.

4. The Defendant's invocation of *Clark v. United States*, made in its June 9, 2003 filing before this Court is therefore inapposite. The 9th Circuit has determined that, due to the *in rem* nature of the case before the Arizona District Court, Innovair is entirely foreclosed from pursuing a valuation of the TLA at the time of its May 21, 1992 release to Basler in that court. *See Defendant's Response to Innovair's Brief,* pg. 4 n. 5 (citing *Clark v. United States*, 19 Cl.Ct. 220 (1990)).

Circuit spoke on the issue of how much compensation Innovair could receive in satisfaction for the Government's transfer of Innovair's property, when it vacated the Arizona District Court's award of just over $2 million. *United States v. Innovair*, 248 F.3d 1173 (9th Cir.2000). While holding that the trial court was jurisdictionally bound to the amount set in the substitute *res* bond, the 9th Circuit noted that "the court determined (properly) that the value of the its interest was at least equal to the amount of the substitute res." *Ibid.* Because the Court of Federal Claims has Tucker Act jurisdiction, it may deal with the injury beyond the District Court's jurisdiction. *United States v. Testan*, 424 U.S. 392, 397, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976).

In oral arguments and briefings before this Court, the Plaintiff alleges that the amount of monetary compensation finally awarded to it under the 9th Circuit's mandate to the Arizona District Court falls very short of fair market value, and so calls on this nation's founding document and its demand that the federal government justly compensate it for property taken. U.S. Const. amend. V and 28 U.S.C. § 1346(a)(2) (2000). Just compensation for property taken requires that our national government restore the owner to as good an economic position, as if the taking had not occurred, computing the fair market value of that property. *Bassett v. United States*, 55 Fed.Cl. 63, 69 (Fed.Cl.2002). The Plaintiff has sufficiently demonstrated in its complaint, filings and oral arguments before this Court, that the transfer of its TLA was a taking outside the scope of *Vereda.* It has also sufficiently alleged that the *res* bond amount falls short of the TLA's fair market value at the date of transfer. In so doing, Innovair has succeeded in its proof that this Court may exercise subject matter jurisdiction over its claim for monetary relief under the 5th Amendment.

### CONCLUSION

For the foregoing reasons, this Court **ORDERS** the parties to participate in a telephonic status conference on Tuesday, December 16, 2003 at 4:00 p.m. E.S.T., to set a schedule for litigating the remaining issues:

1) did the release of the TLA, setting the Arizona District Court's jurisdictional cap, constitute a taking under the 5th Amendment?

2) if yes, what is the difference, if any, between the substitute *res* bond amount and the fair market value of the TLA at the date of its release?

It is so ORDERED.