William PIKULIN, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 11–46C.

United States Court of Federal Claims.

Jan. 31, 2011.

William Pikulin, Brooklyn, NY, pro se.

John S. Groat, United States Department of Justice, Washington, DC, for defendant.

### ORDER OF DISMISSAL

SWEENEY, Judge.

Plaintiff William Pikulin, appearing *pro se*, filed the above-captioned case on January 14, 2011.[1] He alleges that President Barack H. Obama, United States Attorney General Eric H. Holder, and Director of the Administrative Office of the United States Courts James C. Duff "failed to perform their Duty to Guaranty, Protect and Defend [the] Constitution of the United States, Federal Laws and the Rights of the American People," contrary to their oaths of office. In particular, plaintiff asserts that the individual defendants failed to enforce a purported "Willful Default

Judgment" entered by the United States District Court for the Southern District of New York ("Southern District of New York"). As explained below, the court grants plaintiff's application to proceed *in forma pauperis*. However, the court finds that it lacks jurisdiction over plaintiff's complaint and that plaintiff's complaint is frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B).

### I. FACTUAL BACKGROUND [2]

Plaintiff alleges that in 1988 and 1989, the City of New York ("City") awarded his company, W.P. Contractors, Inc., five contracts, including one administered by The City University of New York ("CUNY"). He contends that in the latter half of 1989, various City officials sought his participation in criminal activity and then conspired to cover up their crimes. Then, according to plaintiff, in March 1990, those same officials "destroy[ed]" his company by debarring it from "any Government (City, State and Federal) Contracts for the period of three years," and by failing to lift the debarment when it expired. Compl. ¶ 7. Plaintiff alleges that City officials "blacklisted" plaintiff and prevented plaintiff from finding work and earning income, resulting in the break-up of his family, the destruction of his health, and several attempts on plaintiff's life. *Id.* ¶ 8.

Plaintiff ultimately filed a lawsuit against CUNY, alleging claims pursuant to 42 U.S.C. § 1981 ("§ 1981") and 42 U.S.C. § 1983 ("§ 1983"). On May 15, 1995, the Southern District of New York entered a default in plaintiff's favor. It appears that the court subsequently set aside the default and reinstated plaintiff's suit. Plaintiff alleges the following improprieties: (1) the City and CUNY bribed the judge, the clerk of court, and two state attorneys general to participate in a conspiracy to deny plaintiff the equal protection of the laws pursuant to 42 U.S.C. § 1985 ("§ 1985") and 42 U.S.C. § 1986 ("§ 1986"); (2) the judge engaged in the practice of law by providing testimony in

---

**1.** Mr. Pikulin identifies another individual— Savely Petreykov—as a co-plaintiff in the body of his complaint. However, he included only his own name in the caption of the complaint and he was the only person to sign the complaint. Thus,

the court will refer to Mr. Pikulin as "plaintiff" throughout this order.

**2.** All facts in this section are derived from plaintiff's complaint.

the case in violation of 28 U.S.C. § 454; (3) two state attorneys general engaged in fraud, falsified documents, and violated the testimonial restrictions found in Federal Rules of Evidence 603, 801, and 802; (4) the judge, the clerk of court, and the state attorneys general deprived him of the due process and equal protection rights granted to him pursuant to § 1981, § 1983, and the Fifth and Fourteenth Amendments of the United States Constitution; and (5) the clerk of court falsified docket entries and destroyed documents in violation of the Federal Rules of Civil Procedure.

Plaintiff appealed the decision of the Southern District of New York to the United States Court of Appeals for the Second Circuit ("Second Circuit"). On May 13, 1999, the Second Circuit vacated the dismissal of plaintiff's § 1981 and § 1983 claims and remanded the case to Southern District of New York for further proceedings. Plaintiff alleges that although the Second Circuit attempted to hide the facts of his case, it ultimately directed the enforcement of the set-aside default. He now seeks to effectuate the Second Circuit's purported ruling.

## II. PLAINTIFF'S HISTORY OF LITIGATION[3]

Plaintiff is no stranger to litigation in the federal courts, including the Southern Dis-

trict of New York, the United States District Court for the Eastern District of New York ("Eastern District of New York"), and United States Court of Federal Claims ("Court of Federal Claims"). Since filing the above-mentioned complaint against CUNY in 1995,[4] he has initiated numerous suits in these courts, all of which arise from the same factual circumstances.

### A. Southern District of New York

In the Southern District of New York, plaintiff filed suit against the City on May 12, 1995. *See Petreykov v. City of N.Y.*, No. 96 Civ. 2980(LMM), 1998 WL 146691 (S.D.N.Y. Mar. 24, 1998) (denying plaintiff's motion for relief from judgment); *Petreykov v. City of N.Y.*, No. 96 Civ. 2980(LMM), 1996 WL 744896 (S.D.N.Y. Dec. 31, 1996) (dismissing plaintiff's complaint, which contained § 1981 and § 1983 claims, as time-barred), *aff'd*, 166 F.3d 1201 (2d Cir.1998) (unpublished table decision), *cert. denied*, 527 U.S. 1064, 120 S.Ct. 36, 144 L.Ed.2d 838 (1999). He also filed suit against the state attorney general and another individual on October 7, 1997.[5] *See Petreykov v. Vacco*, 159 F.3d 1347 (2d Cir.1998) (unpublished table decision) (affirming the dismissal of plaintiff's complaint on Eleventh Amendment immunity grounds), *cert. denied*, 525 U.S. 1167, 119 S.Ct. 1086, 143 L.Ed.2d 87 (1999).

---

**3.** The court derives plaintiff's litigation history from publicly available judicial opinions and court dockets. The court is entitled to take judicial notice of such adjudicative facts. *See* Fed. R.Evid. 201; *McTernan v. City of York, Pa.*, 577 F.3d 521, 526 (3d Cir.2009) ("[A] court may take judicial notice of a prior judicial opinion."); *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir.2006) ("[D]ocket sheets are public records of which the court could take judicial notice."); *United States v. Estep*, 760 F.2d 1060, 1063 (10th Cir.1985) (holding that a court may take judicial notice of court records of closely related prior litigation).

**4.** *See Pikulin v. City Univ. of N.Y.*, No. 95 Civ. 1147(LMM), 2001 WL 913943 (S.D.N.Y. Aug. 14, 2001) (dismissing plaintiff's § 1981 and § 1983 claims as time-barred); *Pikulin v. City Univ. of N.Y.*, No. 95 Civ. 1147(LMM), 1996 WL 720094 (S.D.N.Y. Dec. 13, 1996) (dismissing plaintiff's § 1981 and § 1983 claims on Eleventh Amendment immunity grounds), *aff'd in part, vacated in part*, 176 F.3d 598 (2d Cir.1999) (vacating the dismissal of plaintiff's § 1981 and § 1983 claims

and remanding for further proceedings); *Pikulin v. City Univ. of N.Y.*, No. 95 Civ. 1147(LMM), 1996 WL 447997 (S.D.N.Y. Aug. 8, 1996) (denying plaintiff's motion to enforce the default because the default had been set aside); *Pikulin v. City Univ. of N.Y.*, No. 95 Civ. 1147(LMM), 1995 WL 444337 (S.D.N.Y. July 27, 1995) (setting aside the default and permitting the defendant to file a motion to dismiss).

**5.** According to the Southern District of New York's docket, the court dismissed plaintiff's complaint pursuant to 28 U.S.C. § 1915(d) on the same day it was filed, and certified that any appeal from the dismissal order would not be taken in good faith. *See Petreykov v. Vacco*, No. 97–cv–07473, docket entry 4. The court's citation to section 1915(d) likely referred to the pre-April 26, 1996 version of the section, which provided: "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." 28 U.S.C. § 1915(d) (Supp. II 1997).

## B. Eastern District of New York

In the Eastern District of New York, plaintiff filed suit against International Fidelity Insurance Company—his company's surety—on April 11, 1995.[6] *See Petreykov v. Int'l Fid. Ins. Co.,* No. 95 CV 1428, 1999 WL 1186807 (E.D.N.Y. Oct. 12, 1999) (dismissing plaintiff's § 1981 and defamation claims); *Petreykov v. Int'l Fid. Ins. Co.,* No. 95 CV 1428, 1997 WL 36988 (E.D.N.Y. Jan. 7, 1997) (noting plaintiff's vexatious and harassing motions and barring plaintiff from filing additional motions without prior permission from the court); *Petreykov v. Int'l Fid. Ins. Co.,* No. 95 CV 1428, 1996 WL 524398 (E.D.N.Y. Sept. 6, 1996) (reinstating plaintiff's § 1981 and defamation claims). Over ten years later, on August 10, 2006, he filed suit against the United States, two federal judges, and the clerk of court. *See Pikulin v. United States,* No. 06–CV–3959 (CBA), slip op. (E.D.N.Y. Dec. 15, 2006) (dismissing plaintiff's complaint, which contained claims based on § 1981, § 1983, and § 1985, as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)). Then, on January 30, 2007, he filed suit against the United States Attorney General, a federal judge, and the clerk of court for the Southern District of New York. *See Pikulin v. Gonzales,* No. 07–CV–0412 (CBA), 2007 WL 1063353 (E.D.N.Y. Apr. 5, 2007) (dismissing plaintiff's complaint, which contained claims based on § 1981, § 1983, § 1985, and § 1986, as frivolous pursuant to its inherent power to dismiss frivolous cases). On January 29, 2008, the Eastern District of New York issued an order directing the clerk of court "not to accept any future filings from plaintiff[ ]" in any of the three cases just described. *Pikulin v. United States,* Nos. 95 CV 1428(EHN), 06 CV 3959(CBA), 07 CV 0412(CBA), 2008 WL 267283 (E.D.N.Y. Jan. 29, 2008).

## C. Court of Federal Claims

Finally, not including the instant action, plaintiff has filed five suits in the Court of Federal Claims. He first filed suit in this court on February 7, 2000, alleging that the judges of the federal district courts conspired against him and violated their oath of office. *Pikulin v. United States,* No. 00–63C, slip op. (Fed.Cl. June 29, 2000), *petition for writ of mandamus denied,* 243 F.3d 565 (Fed.Cir. 2000) (unpublished table decision). Construing plaintiff's allegations as either a tort claim, a breach of contract claim, a criminal matter, or a request for impeachment, the court concluded that it lacked jurisdiction over plaintiff's claims and dismissed the complaint. *Id.* The court subsequently denied plaintiff's motion to amend the judgment in a July 28, 2000 order.

Plaintiff filed his second suit in this court on May 4, 2001, directed against the clerk of court for the Southern District of New York, alleging violations of the Fifth and Fourteenth Amendments, breach of the judicial oath, breach of international law, and a criminal conspiracy pursuant to § 1985. *Pikulin v. United States,* No. 01–274C, slip op. (Fed. Cl. Nov. 29, 2001), *aff'd,* 41 Fed.Appx. 462 (Fed.Cir.2002) (unpublished decision). The court dismissed plaintiff's complaint for lack of jurisdiction, *id.,* and on January 3, 2002, denied plaintiff's motion for reconsideration. On June 6, 2001, plaintiff filed his third suit in this court, directed against the clerk of court for the Eastern District of New York, alleging violations of the Fifth and Fourteenth Amendments, the Federal Rules of Evidence, the Federal Rules of Civil Procedure, and international law. *Pikulin v. United States,* No. 01–343C, slip op. (Fed.Cl. Sept. 26, 2001), *aff'd,* 41 Fed.Appx. at 462. The court again dismissed plaintiff's complaint for lack of jurisdiction, *id.,* and on November 28, 2001, denied plaintiff's motion for reconsideration.

Plaintiff filed his fourth and fifth suits in this court on March 10, 2004, and September 2, 2004, respectively. *Pikulin v. United States,* Nos. 04–384C, 04–1402C, slip op. (Fed.Cl. Feb. 22, 2005), *petition for writ of mandamus denied,* 125 Fed.Appx. 1002 (Fed. Cir.2005) (unpublished per curiam decision), *petition for writ of mandamus denied,* 143 Fed.Appx. 343 (Fed.Cir.2005) (unpublished per curiam decision) (noting that "[f]uture

---

**6.** According to the Eastern District of New York's docket, the Second Circuit dismissed plaintiff's appeal as frivolous in May 2000. *See*

*Petreykov v. Int'l Fid. Ins. Co.,* No. 95 CV 1428, docket entry 126.

documents submitted by petitioner[ ] will be reviewed and, if they involve the same matter, will be placed in the file without response"). The court consolidated the two cases on December 7, 2004. *Id.* In those cases, plaintiff alleged that the City "illegally imposed an income tax and sales tax on city residents"; that City officials "engaged in various acts of corruption, racketeering and mismanagement of city resources"; that certain law enforcement officers "made assassination attempts" on him and "further plotted to destroy" his health and life; that members of the federal judiciary "engaged in a conspiracy to obstruct justice and deny [him] the right to receive compensation allegedly awarded in prior lawsuits" in violation of his civil rights pursuant to § 1981, § 1983, § 1985, and § 1986; and that certain federal judges "violated their oaths to support the Constitution." *Id.* The court dismissed all of plaintiff's claims for lack of jurisdiction. *Id.*

In the instant case, plaintiff demands that this court "enforce [his] Constitutional Rights based on Laws of the United States and International Treaties signed by the United States to pay Compensation due in full, as specified in the Willful Default Judgment ... [entered] on May 15, 1995," in the amount of $1,011,700,000. Compl. ¶ 39.

## III. DISCUSSION

### A. The United States as Defendant

■ As an initial matter, the court addresses plaintiff's naming of President Obama, Attorney General Holder, and Director Duff as co-defendants with the United States.[7] It is well settled that the United States is the only proper defendant in the Court of Federal Claims. *See* 28 U.S.C. § 1498(a)(1) (2006) (providing that the Court of Federal Claims has jurisdiction over claims against the United States); RCFC 10(a) (requiring that the United States be designated as the defendant in the Court of

Federal Claims); *Stephenson v. United States,* 58 Fed.Cl. 186, 190 (2003) ("[T]he only proper defendant for any matter before this court is the United States, not its officers, nor any other individual."). This court does not possess jurisdiction to hear claims against individual federal government officials or judges. *See Stump v. Sparkman,* 435 U.S. 349, 355–56, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (recognizing federal judges are immune from suit when, "at the time [the judge] took the challenged action," the judge had the authority to act); *Brown v. United States,* 105 F.3d 621, 624 (Fed.Cir. 1997) ("The Tucker Act grants the Court of Federal Claims jurisdiction over suits against the United States, not against individual federal officials."). Indeed, the jurisdiction of the Court of Federal Claims "is confined to the rendition of money judgments in suits brought for that relief against the United States, ... and if the relief sought is against others than the United States, the suit as to them must be ignored as beyond the jurisdiction of the court." *United States v. Sherwood,* 312 U.S. 584, 588, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). Accordingly, plaintiff's claims against President Obama, Attorney General Holder, and Director Duff are dismissed for lack of jurisdiction.

### B. Subject Matter Jurisdiction

The court next addresses whether it possesses jurisdiction over the subject matter of plaintiff's claims against the United States, the sole remaining defendant.

#### 1. Legal Standard

■ Whether the court has jurisdiction to decide the merits of a case is a threshold matter. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing

---

**7.** Plaintiff also names certain state officials in the body of his complaint. The Court of Federal Claims does not have jurisdiction to hear claims against states, state agencies, or state officials. *See Vlahakis v. United States,* 215 Ct.Cl. 1018, 1018 (1978) ("The plaintiff's assertions concerning Illinois state officials and courts are obvious-

ly beyond this court's jurisdiction."); *Moore v. Pub. Defenders Office,* 76 Fed.Cl. 617, 620 (2007) ("When a plaintiff's complaint names private parties, or local, county, or state agencies, rather than federal agencies, this court has no jurisdiction to hear those allegations.").

the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868). The parties or the court *sua sponte* may challenge the existence of subject matter jurisdiction at any time. *Folden v. United States*, 379 F.3d 1344, 1354 (Fed.Cir.2004).

When considering whether to dismiss a complaint for lack of jurisdiction, a court assumes that the allegations in the complaint are true and construes those allegations in plaintiff's favor. *Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir.1995). A pro se plaintiff's complaint, " 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers'...." *Hughes v. Rowe*, 449 U.S. 5, 10 n. 7, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (quoting *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). However, a pro se plaintiff is not excused from meeting basic jurisdictional requirements. *See Henke*, 60 F.3d at 799 ("The fact that [the plaintiff] acted *pro se* in the drafting of his complaint may explain its ambiguities, but it does not excuse its failures, if such there be."). In other words, a *pro se* plaintiff is not excused from his or her burden of proving, by a preponderance of the evidence, that the court possesses jurisdiction. *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988).

The ability of the Court of Federal Claims to entertain suits against the United States is limited. "The United States, as sovereign, is immune from suit save as it consents to be sued." *Sherwood*, 312 U.S. at 586, 61 S.Ct. 767. The waiver of immunity "cannot be implied but must be unequivocally expressed." *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969).

**2. Plaintiff's Allegations of Jurisdiction**

Plaintiff alleges that the Court of Federal Claims possesses jurisdiction over his complaint based upon the provisions of the Tucker Act, which is the principal statute governing the jurisdiction of this court. *See* Compl. ¶ 3 (identifying the following bases for jurisdiction: 28 U.S.C. § 1491(a)(1), 28 U.S.C. § 1491(a)(2), "Laws and Constitution of the United States," and "Acts of Congress"). The Tucker Act waives sovereign immunity for claims against the United States, not sounding in tort, that are founded upon the United States Constitution, a federal statute or regulation, or an express or implied contract with the United States. 28 U.S.C. § 1491(a)(1) (2006). However, the Tucker Act is merely a jurisdictional statute and "does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Instead, the substantive right must appear in another source of law, such as a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1554 (Fed.Cir. 1994) (en banc). Accordingly, the court examines each of the other sources of law cited by plaintiff.

Plaintiff first asserts that various federal officials violated criminal statutes. In particular, he alleges that certain federal judges illegally engaged in the practice of law in violation of 28 U.S.C. § 454, and that certain federal officials were guilty of bribery, conspiracy, and obstruction of justice. However, the Court of Federal Claims lacks jurisdiction to entertain criminal matters. *See Joshua v. United States*, 17 F.3d 378, 379–80 (Fed.Cir.1994) (affirming that the Court of Federal Claims had " 'no jurisdiction to adjudicate any claims whatsoever under the federal criminal code' "); *Kania v. United States*, 650 F.2d 264, 268 (Ct.Cl.1981) (noting that "the role of the judiciary in the high function of enforcing and policing the criminal law is assigned to the courts of general jurisdiction and not to this court"). Thus, the court lacks jurisdiction over these claims.

Next, plaintiff contends that certain federal officials violated Federal Rule of Evidence 603, related to the oath or affirmation required by testifying witnesses, and Federal Rules of Evidence 801 and 802, related to hearsay testimony. The Federal Rules of

Evidence do not create an enforceable right for money damages against the United States. *See* 28 U.S.C. § 2072(b) (declaring that the Federal Rules of Evidence "shall not abridge, enlarge or modify any substantive right"). Accordingly, the court lacks jurisdiction over these claims.

■ Plaintiff then asserts that he was improperly deprived of his civil rights, both under the United States Constitution and federal statutes. In particular, plaintiff cites the Due Process Clause of the Fifth Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment. However, this court lacks jurisdiction over claims arising under these clauses because they are not money-mandating. *See LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed.Cir. 1995) ("[T]he Due Process Clauses of the Fifth and Fourteenth Amendments [and] the Equal Protection Clause of the Fourteenth Amendment ... [are not] a sufficient basis for jurisdiction because they do not mandate payment of money by the government."); *Mullenberg v. United States*, 857 F.2d 770, 773 (Fed.Cir.1988) (holding that the Due Process and Equal Protection Clauses "do not trigger Tucker Act jurisdiction in the courts"). Plaintiff also cites various provisions of the Civil Rights Acts, including § 1981, § 1983, § 1985, and § 1986, as bases for his claim. The court does not possess jurisdiction to entertain claims based on these statutes. *See Marlin v. United States*, 63 Fed.Cl. 475, 476 (2005) ("[T]he Court does not have jurisdiction to consider civil rights claims brought pursuant to 42 U.S.C. §§ 1981, 1983, or 1985 because jurisdiction over claims arising under the Civil Rights Act resides exclusively in the district courts."); *Anderson v. United States*, 22 Cl. Ct. 178, 179 n. 2 (1990) (noting that the United States Claims Court lacked jurisdiction to entertain claims under § 1983, § 1985(3), and § 1986, *aff'd*, 937 F.2d 623 (Fed.Cir.1991) (unpublished table decision). In sum, the court lacks jurisdiction over plaintiff's civil rights claims.

■ Finally, plaintiff asserts that "International Agreements and Treaties signed by the United States of America," Compl. ¶ 3(e), provide this court with jurisdiction over his complaint, specifically identifying the Universal Declaration of Human Rights, G.A. Res. 217A (III), U.N. Doc. A/810 (Dec. 10, 1948), the American Declaration of the Rights and Duties of Man, O.A.S. Res. XXX (1948), O.A.S. Off. Rec. OEA/Ser. LV/I.4 Rev. (1965), and the International Covenant on Civil and Political Rights, *opened for signature* Dec. 16, 1966, 999 U.N.T.S. 171. In particular, plaintiff quotes language from each of these agreements providing that all individuals should have the right to a judicial remedy for their grievances. However, as a general matter, these multinational agreements do not create enforceable obligations. *See Sosa v. Alvarez–Machain*, 542 U.S. 692, 734–35, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004) (holding that the Universal Declaration of Human Rights "does not of its own force impose obligations as a matter of international law" and that the International Covenant on Civil and Political Rights is "not self-executing and so [does] not itself create obligations enforceable in the federal courts"); *Garza v. Lappin*, 253 F.3d 918, 925 (7th Cir.2001) (holding that the American Declaration of the Rights and Duties of Man "is an aspirational document which, ... [does] not on its own create any enforceable obligations on the part of any of the [Organization of American States] member nations"). It follows that the provisions quoted by plaintiff do not create an enforceable right for money damages against the United States under the Tucker Act. *See, e.g., Gimbernat v. United States*, 84 Fed.Cl. 350, 354 (2008) ("The [Universal Declaration of Human Rights] does not contain any substantive rights enforceable against the federal government for money damages, as required under the Tucker Act, and therefore such claims cannot be heard in this court."); *Miller v. United States*, 67 Fed.Cl. 195, 199–200 (2005) (holding that the Court of Federal Claims lacks jurisdiction over treaty law claims, including claims based on the International Covenant on Civil and Political Rights, "in which the government acts in its sovereign capacity"); *Phaidin v. United States*, 28 Fed.Cl. 231, 234 (1993) (noting that the Universal Declaration of Human Rights is "an authoritative statement of customary international law," but that "the Tucker Act

contains no language permitting this court to entertain jurisdiction over claims founded upon customary international law" and that language providing for judicial recourse "is hortatory and cannot be fairly interpreted as mandating compensation for violations thereof"). Thus, the court lacks jurisdiction over plaintiff's international law claims.

In sum, plaintiff has failed to cite a source of law—whether it be a constitutional provision, a federal statute or regulation, or a contract with the United States—that creates a "substantive right enforceable against the United States for money damages." Thus, the court lacks jurisdiction over the subject matter of plaintiff's complaint.

### C. Statute of Limitations

 Even if the court possessed jurisdiction to grant the relief requested by plaintiff—the enforcement of the so-called "Willful Default Judgment" purportedly entered by the Southern District of New York on May 15, 1995–it would be unable to do so due to the statute of limitations. Claims against the United States that are filed in the Court of Federal Claims must be "filed within six years after such claim first accrues." 28 U.S.C. § 2501. In *John R. Sand & Gravel Co. v. United States*, the United States Supreme Court held that 28 U.S.C. § 2501 is a "special statute of limitations" for claims against the United States that provides an "absolute" limit on the ability of the Court of Federal Claims to reach the merits of a case. 552 U.S. 130, 132–35, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008). Plaintiff's claim for the enforcement of the so-called "Willful Default Judgment" would have accrued more than fifteen years ago, well beyond the six-year statute of limitations applicable in this court. Accordingly, plaintiff's complaint, to the extent it is seeking enforcement of the so-called "Willful Default Judgment," is time-barred.

### D. Proceedings *In Forma Pauperis*

 Plaintiff filed, concurrent with his complaint, an application to proceed in *forma pauperis*. Pursuant to 28 U.S.C. § 1915 ("§ 1915"), courts of the United States are permitted to waive filing fees and security under certain circumstances.[8] *See* 28 U.S.C. § 1915(a)(1); *see also Hayes v. United States*, 71 Fed.Cl. 366, 366–67 (2006) (concluding that § 1915(a)(1) applies to both prisoners and nonprisoners alike). Plaintiffs wishing to proceed *in forma pauperis* must submit an affidavit that lists all of their assets, declares that they are unable to pay the fees or give the security, and states the nature of the action and their belief that they are entitled to redress. 28 U.S.C. § 1915(a)(1). Plaintiff has satisfied these statutory requirements.

Although plaintiff has satisfied the requirements of § 1915(a)(1), the court determines that plaintiff's complaint is deficient under § 1915(e)(2), which requires courts to screen complaints filed by plaintiffs proceeding *in forma pauperis* and dismiss those complaints that meet the specified criteria. The section provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
>
> (A) the allegation of poverty is untrue; or
>
> (B) the action or appeal—
>
> (i) is frivolous or malicious;
>
> (ii) fails to state a claim on which relief may be granted; or
>
> (iii) seeks monetary relief against a defendant who is immune from such relief.

*Id.* § 1915(e)(2).

Since 1995, plaintiff has bombarded this court, the Southern District of New York, and the Eastern District of New York with complaints and other filings in a fruitless quest to enforce a nonexistent default judg-

---

8. While the Court of Federal Claims is not generally considered to be a "court of the United States" within the meaning of title 28, the court has jurisdiction to grant or deny applications to proceed *in forma pauperis*. *See* 28 U.S.C. § 2503(d) (deeming the Court of Federal Claims to be "a court of the United States" for the purposes of § 1915); *see also Matthews v. United States*, 72 Fed.Cl. 274, 277–78 (2006) (recognizing that Congress enacted the Court of Federal Claims Technical and Procedural Improvements Act of 1992, authorizing the court to, among other things, adjudicate applications to proceed *in forma pauperis* pursuant to § 1915).

ment. The vexatiousness of plaintiff's unending litigation has not gone unnoticed. In plaintiff's litigation against International Fidelity Insurance Company, the Eastern District of New York noted plaintiff's vexatious and harassing motions and barred plaintiff from filing additional motions without prior permission from the court, *Petreykov*, 1997 WL 36988, at *1, and the Second Circuit dismissed plaintiff's appeal as frivolous, *Petreykov*, No. 95 CV 1428, docket entry 126. In plaintiff's litigation against the state attorney general, the Southern District of New York dismissed plaintiff's complaint as frivolous pursuant to an older version of § 1915. *Petreykov*, No. 97–cv–07473, docket entry 4. In one of plaintiff's suits against the United States, the United States Court of Appeals for the Federal Circuit denied plaintiff's petition for a writ of mandamus, noted that it had previously "denied two previous mandamus petitions regarding the same matter," and indicated that "[f]uture documents submitted by [plaintiff would] be reviewed and, if they involve[d] the same matter, [would] be placed in the file without response." *Pikulin*, 143 Fed.Appx. at 343. In plaintiff's litigation against two federal judges and a clerk of court, the Eastern District of New York dismissed plaintiff's complaint as frivolous pursuant to § 1915(e)(2)(B). *Pikulin*, No. 06–CV–3959 (CBA), slip op. at 1. In plaintiff's litigation against the United States Attorney General, another federal judge, and another clerk of court, the Eastern District of New York dismissed plaintiff's complaint as frivolous pursuant to the court's inherent authority to dismiss frivolous complaints. *Pikulin*, 2007 WL 1063353, at *1. Finally, after plaintiff continued to submit documents in each of the three cases that had been dismissed by

the Eastern District of New York, that court issued an order directing the clerk of court "not to accept any future filings from plaintiff[ ]" in those cases. *Pikulin*, 2008 WL 267283, at *1.

It is abundantly clear that plaintiff alleges the same claims in this case that he has previously alleged in this court, the Southern District of New York, and the Eastern District of New York over the past sixteen years. All three courts have repeatedly informed plaintiff of the defects—both jurisdictional and otherwise—of his claims, yet he continues to assert them. Because plaintiff has failed, once again, to raise claims within the jurisdiction of this court, the court finds that plaintiff's complaint is frivolous pursuant to § 1915(e)(2)(B).[9]

## IV. CONCLUSION

For the reasons set forth above, the court concludes that it lacks jurisdiction to entertain plaintiff's claims and **DISMISSES** plaintiff's complaint as **FRIVOLOUS**. The clerk shall enter judgment accordingly.

Further, the clerk is directed to mail courtesy copies of this order to the following individuals:

Ruby J. Krajick

Clerk of Court

United States District Court

Southern District of New York

Daniel Patrick Moynihan United States Courthouse

500 Pearl Street

New York, N.Y. 10007–1312

Robert C. Heinemann

---

**9.** Prisoners who have had more than three complaints or appeals dismissed as frivolous are foreclosed from proceeding *in forma pauperis* in subsequent suits. 28 U.S.C. § 1915(g). Plaintiff is not a prisoner, and § 1915(g) only applies to prisoners. *See, e.g., Andrews v. King*, 398 F.3d 1113, 1121–22 (9th Cir.2005) (holding that "dismissals of actions brought while a plaintiff was in the custody of the [United States Immigration and Naturalization Service] do not count as 'strikes' within the meaning of § 1915(g), so long as the detainee did not also face criminal charges"); *Carson v. Johnson*, 112 F.3d 818, 821–22 (5th Cir.1997) (concluding that the distinction between prisoners and nonprisoners

made by § 1915(g) was rational); *Dolberry v. Levine*, 567 F.Supp.2d 413, 422 (W.D.N.Y.2008) ("[A] plaintiff who was not incarcerated at the time that the complaint was filed is not considered a "prisoner" for purposes of the three-strikes rule."). Nevertheless, the court is compelled to note that plaintiff has had more than three complaints and appeals dismissed as frivolous. *See Petreykov*, No. 95 CV 1428, docket entry 126 (appeal dismissed); *Pikulin*, 2007 WL 1063353, at *1 (complaint dismissed); *Pikulin*, No. 06–CV–3959 (CBA), slip op. at 1 (complaint dismissed); *Petreykov*, No. 97–cv–07473, docket entry 4 (complaint dismissed).

Clerk of Court
United States District Court
Eastern District of New York
Theodore Roosevelt United States Courthouse
225 Cadman Plaza East
Brooklyn, N.Y. 11201

**IT IS SO ORDERED.**