Donald A. HENKE, Plaintiff–Appellant,

v.

The UNITED STATES, Defendant–Appellee.

No. 94–5124.

United States Court of Appeals, Federal Circuit.

July 12, 1995.

George H. Dygert, Dygert & Associates, Charlottesville, VA, argued for plaintiff-appellant.

Martin F. Hockey, Jr., Atty., Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued for defendant-appellee. With him on the brief were Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director and Jeanne E. Davidson, Asst. Director.

Before PLAGER and RADER, Circuit Judges, and COWEN, Senior Circuit Judge.

Opinion for the court filed by Circuit Judge PLAGER, with whom Senior Circuit Judge COWEN joins. Dissenting opinion filed by Circuit Judge RADER.

PLAGER, Circuit Judge.

Donald A. Henke appeals from a judgment of the Court of Federal Claims dismissing his suit against the United States as time-barred. *Henke v. United States,* No. 93-702C (Ct.Fed.Cl. May 10, 1994). We reverse and remand.

## BACKGROUND

■ As the trial court correctly stated, in deciding the Government's motion to dismiss plaintiff Henke's complaint, the court was obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor. *See Scheuer v. Rhodes,* 416 U.S. 232, 236–37, 94 S.Ct. 1683, 1686–87, 40 L.Ed.2d 90 (1974); *Catawba Indian Tribe of South Carolina v. United States,* 982 F.2d 1564, 1568–69 (Fed.Cir.1993) ("In reviewing the propriety of this dismissal, we take as true the facts alleged [in the complaint].") (citations omitted).

In his complaint plaintiff alleges that, throughout the time involved, he was a contract pilot for the Federal Drug Enforcement Administration ("DEA"). In June of 1987, DEA officials asked Henke to organize a flight that would carry some 18,000 lbs. of marijuana from Colombia to a landing strip in a dry salt lake in Chihuahua Province, Mexico. The purpose alleged was to provide information that would lead to "arresting a criminal organization involved in narcotics trafficking into the United States." Plaintiff would be paid $250,000, which was to include his expenses and his fee for the service.

Henke alleges that he arranged the mission, which involved: renting a plane, a Douglas DC–6B four engined transport plane, from a firm in Detroit; hiring flight personnel whom he trained to perform the mission; execution of the mission; and returning the plane to the Detroit firm. After five months of preparation, the marijuana was picked up as planned and delivered, on November 14, 1987, to the designated clandestine landing strip in Mexico. The plane was then flown to Laughlin Air Force Base in Del Rio, Texas, where it was cleared and released by Customs for further movement in the United States.

Henke alleges that he thereafter made repeated inquiries about payment from the DEA, finally making a "formal written request" on or about May 15, 1989. No payment was forthcoming. On May 14, 1992, Henke filed, *pro se,* a complaint in the United States District Court for the Western District of Virginia, alleging his contract and claiming damages of $250,000 for non-payment.[1] On October 19, 1992, the district court, noting that Henke's contract claim was for more than $10,000, dismissed Henke's suit as beyond the jurisdictional amount for which the court could grant relief. The district court dismissed the suit without prejudice, indicating that such a suit must be filed in the Court of Federal Claims.

On November 16, 1993, still *pro se,* Henke filed his suit in the Court of Federal Claims, again seeking contract damages of $250,000. The judge, apparently *sua sponte,* issued a show cause order asking why Henke's claim should not be dismissed as untimely filed.

1. In his district court complaint Henke included a second count alleging a tort claim for the DEA's subsequent wrongful conversion of a different plane. This count was not included in the complaint filed in the Court of Federal Claims.

*See* 28 U.S.C. § 2501 (1988), providing that claims over which the Court of Federal Claims has jurisdiction shall be barred unless filed "within six years after such claim first accrues." Henke responded that he had earlier filed in the district court, and he believed that the district court filing tolled the statute of limitations.

■ The Government then filed a motion to dismiss the complaint on the ground that the court lacked jurisdiction over plaintiff's claim. The basis for the Government's motion was that plaintiff's claim was barred by the six year statute of limitations. According to the Government, the delivery of the shipment of marijuana on November 14, 1987, marked the date on which Henke's cause of action accrued. The complaint in the Court of Federal Claims was filed on November 16, 1993, six years and two days later, and thus beyond the six year limit for filing.[2]

Plaintiff's response brief argued that the completion date for the contract could not be fixed at the date the marijuana was delivered in Mexico because there were still activities to be accomplished under the contract. He pointed out that "a DEA clandestine air operation was not complete for payment purposes until the After–Action reports and DEA Form 6s were completed, along with a full debriefing of the air crews and undercover informants." By order dated May 10, 1994, the Court of Federal Claims held that Henke's claim accrued on November 14, 1987, and, finding no reason to equitably toll the statute, the Court of Federal Claims dismissed Henke's suit. Henke appeals to this court.

## DISCUSSION

### 1.

It is difficult for those of us not directly involved in clandestine activity such as that alleged by Henke to imagine the kind and scope of Government contracting of which he claims to have been a part, and for which he claims taxpayers' dollars are owed him. Nevertheless, the issue before us is not whether such a contract should have been, or even was, made, and whether it was or was not performed, but whether he alleged its existence and its terms in a manner that entitles him to his day in court on his claim of breach.

■ At the outset, we observe that the Government in its brief characterizes the question in this case as one of strict compliance with the statute of limitations, which "is a condition of the United States' consent to suit and, thus, is a condition upon the Court of Federal Claims' jurisdiction ... [T]he Court should strictly construe the application of the statute of limitations." The Government thus casts the matter as one involving sovereign immunity, and not simply one of whether there is an affirmative defense available to the Government based on the statute of limitations.[3]

■ In so doing, the Government neglects to point out that the question of statutory time bars and sovereign immunity is no longer amenable to bright-line rules, and that the historic role of strict construction of sovereign immunity has been thrown into considerable question by recent Supreme Court

2. As the court noted in its November 19, 1993 order to show cause, November 14, 1993 fell on a Sunday. Consequently, the date for filing the complaint would extend to Monday, November 15, 1993. *See* Court of Federal Claims Rule 6(a); *Wood–Ivey Systems Corp. v. United States*, 4 F.3d 961, 964 (Fed.Cir.1993). Technically, then, the complaint was only one day late.

3. The bar to a cause of action raised by the statute of limitations is an affirmative defense to the cause. *See, e.g.,* Fed.R.Civ.P. 8(c): "In pleading to a preceding pleading, a party shall set forth affirmatively ... statute of limitations ... and any other matter constituting an avoidance or affirmative defense." When properly raised, and if found to apply, the running of the statutory period means that the plaintiff is not entitled to a judicial remedy for the alleged wrong. *See* 5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure, Civil 2d § 1270 and n. 29 (1990). The raising of the statutory bar to a remedy does not, as such, deprive the court of jurisdiction to hear the cause in the first instance. Indeed, the court could not adjudicate the question of the proper application of the statute if it did not have subject matter jurisdiction over the claim. *See, e.g.,* 28 U.S.C. § 2501: "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."

decisions. See, *e.g.*, *United States v. Locke*, 471 U.S. 84, 94 n. 10, 105 S.Ct. 1785, 1792 n. 10, 85 L.Ed.2d 64 (1985) (stating that the Court was leaving open the general question of whether principles of equitable tolling, waiver, and estoppel apply against the Government when it involves a statutory filing deadline); *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (*Irwin*) (holding that the rule of equitable tolling of statutory time bars is applicable to suits against the Government in the same way that it is applicable to private suits). For a discussion of the uneven application of sovereign immunity rules in this area, specifically acknowledged by the Court in *Irwin*, *see* 4A Charles A. Wright & Arthur B. Miller, Federal Practice and Procedure § 1163 (1987); *see also* Cynthia Reed, "Time Limits for Federal Employees Under Title VII: Jurisdictional Prerequisites or Statutes of Limitation?," 74 *Minn.L.Rev.* 1371 (1990), for an exhaustive treatment of the differing views among the circuits.

For the reasons we shall explain, it is unnecessary in this case for us to examine in detail the current state of sovereign immunity doctrine as it applies to statutory time-bars. *See Wood–Ivey Systems Corp. v. United States*, 4 F.3d 961, 968 (1993) (Plager, J., concurring) for a fuller discussion of this issue. It is enough to note that, given the complex and subtle nature of this inquiry, it is not helpful to a court to have the Government treat it as a simply black-and-white proposition, nor does it enhance the credibility of the Government's position.

### 2.

We turn first to a key question in the case: based on Henke's allegations, when can it be said his cause of action accrued? "As a general rule, a claim accrues when all events necessary to fix the Government's liability have occurred, *e.g.*, the services have been rendered, thus entitling the contractor to demand payment." *L.S.S. Leasing Corp. v. United States*, 695 F.2d 1359, 1365 (Fed.Cir. 1982), citing *Nager Elec. Co. v. United States*, 368 F.2d 847, 851, 177 Ct.Cl. 234 (1966). The parties dispute when Henke's performance was complete. Henke alleges

that his performance was not complete until he had been debriefed. Flying and unloading the plane was merely the physical activity involved. The Government argues that, in his complaint, Henke states that he delivered the marijuana on November 14, 1987. Therefore, Henke's claim accrued on November 14, 1987, and was time-barred after November 15, 1993.

As noted earlier, we are obligated to accept Henke's version of the facts as he alleges them, and to draw all reasonable inferences in his favor. The fact that he acted *pro se* in the drafting of his complaint may explain its ambiguities, but it does not excuse its failures, if such there be. The complaint states that he was approached by the DEA to undertake a mission involving flying a load of Colombian marijuana to a clandestine landing strip in Mexico. In the same sentence he goes on to explain that the purpose was the "arresting [of] a criminal organization involved in narcotics trafficking into the United States."

It is difficult to understand how the act of delivering the marijuana clandestinely to Mexico in and of itself completed the purpose of the mission. At the least, reasonable inferences suggest that something more could be expected of the mission. Was there not to be information gained from the route of the flight, identity of participants (other than Henke's people), or involvement of government agents of the several countries? Was there no desire by U.S. officials to know what in fact occurred, and no obligation on Henke's part to tell them? Is it a reasonable inference that the United States Government wanted to pay $250,000 for nothing other than to move some marijuana from Colombia to Mexico, so it would be closer to the United States? Could Henke have terminated all participation in the mission immediately upon off-loading the marijuana and successfully claimed he had done all that his contract required?

Beyond the sheer logic of the situation, the fact that, after the drop was made, the plane allegedly landed at a United States Air Force base where it was cleared into the country suggests a continuing involvement by agencies of the United States Government during

some period after the actual November 14 drop. And the allegation that part of the mission arrangements included the return of the aircraft to Detroit clearly infers some contracted-for set of activities beyond November 14.

Whatever we may believe about Henke's story, it is clear that as he alleges it the purpose of the operation was to gather information about Colombian and Mexican involvement in drug trafficking into the United States. Simply assisting that traffic by delivering 18,000 pounds of marijuana to the Mexicans seems an unlikely accomplishment of that purpose, and not one for which United States agents would likely agree to pay $250,000. The notion that the operation, whatever it was, in which Henke was involved ended on November 14, 1987, is simply not supportable on the pleadings in the record.

It may be that at trial the Government will prove that in fact that is all there was to the contract. But that is not all that Henke alleges, and on the record before us we must conclude that the cause of action accrued at some date after November 14, 1987, a date not yet ascertained, when all the activities involved in the alleged contract were completed.

### 3.

Henke offers another reason why his claim is not barred. Even assuming that the Government is correct that the contract as alleged was completed and the cause of action accrued on November 14, 1987, Henke argues that he nevertheless filed timely. Henke filed in the wrong court, an action not peculiar to *pro se* complainants. Had Henke's case been transferred by the district court to cure the want of jurisdiction, pursuant to 28 U.S.C. § 1631, the date of filing in the district court would be taken as the date of commencing the action in the Court of Federal Claims. *See* 28 U.S.C. § 1631 (1988) ("the action or appeal shall proceed as if it had been filed in ... the court to which it is transferred on the date upon which it was actually filed in ... the court from which it is transferred.").

But in this case the district court simply dismissed the suit without ordering a transfer, and 28 U.S.C. § 1631 is not applicable. The issue, then, is whether the failure of the district court to affirmatively transfer the action denies Henke the benefit of the earlier filing date.

Henke argues that, even without statutory compliance, Supreme Court precedent has provided, in similar situations, that the statute of limitations is satisfied by timely filing in the wrong court. He cites *Burnett v. New York Central Railroad Co.,* 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965), and related cases which support that proposition in the context of suits under the Federal Employers Liability Act. In the alternative, Henke argues that, as a matter of equity, his contract claim should be deemed by the Court of Appeals as transferred pursuant to statute to cure want of jurisdiction. In support he cites a recent Ninth Circuit case, *Kolek v. Engen,* 869 F.2d 1281, 1284 (9th Cir.1989) (*Kolek*), which did exactly that.

The Government does not directly respond to Henke's argument based on *Burnett,* but instead confuses that question, one of whether as a matter of law the earlier filing carries over to the later court, with the question of whether the circumstances of the case call for equitable tolling a-la *Irwin.* The Government argues that Henke was free to file anew in the Court of Federal Claims; instead of diligently pursuing his rights, Henke waited until his claim was barred; although courts may equitably toll their statutes of limitations for plaintiffs who diligently pursue their rights, *Irwin,* 498 U.S. at 96, 111 S.Ct. at 457–58, courts are under no obligation to toll the statute for a petitioner who is not diligent.[4] The Government concludes that Henke was not diligent; the Court of Federal Claims properly dismissed his case as time-barred. All of which is beside the point that Henke argues here.

---

4. This is the only reference in the Government's brief to *Irwin.* Its applicability to the jurisdictional issue is not discussed.

With regard to Henke's alternative argument based on *Kolek,* the Government argues that *Kolek* is factually distinguishable, and in any event the better procedure would be for Henke to appeal to the Fourth Circuit the failure of the trial court to have ordered a transfer. Of course, the time for pursuing such an appeal has long expired.

Henke's several arguments for finding that, as a matter of law, his original filing in the district court effectively determined the filing date in the Court of Federal Claims are imaginative, and challenging. The Government's attempts to avoid the arguments are not very persuasive. After considering the matter fully, however, we conclude that it is not necessary for us to decide these rather far-reaching propositions. Our determination, that the cause of action did not accrue until after the November 14 date, affords Henke complete relief from the statutory bar, relief that would not be any greater were it to be based on the additional grounds he proposes. This makes it unnecessary for us to decide the other issues raised.[5]

## CONCLUSION

On the allegations in his complaint, Henke's claim is not time-barred. In holding to the contrary, the trial court erred. We reverse the dismissal and return the matter to the Court of Federal Claims for further proceedings.

### *REVERSED AND REMANDED*

RADER, Circuit Judge, dissenting.

The United States Court of Federal Claims dismissed Donald Henke's breach of contract claim as barred by the statute of limitations. *Henke v. United States,* Civ. No. 93–702C (Fed.Cl. May 10, 1994) (order dismissing complaint). Because Mr. Henke did not file his claim within the statutory time period and did not show a contract with the Government, I would affirm.

## *BACKGROUND*

Mr. Henke occasionally worked as a pilot for the Federal Drug Enforcement Agency (DEA). Around June 5, 1987, the Resident Agent in charge of DEA's Tampa, Florida office asked Mr. Henke to assist DEA in an undercover drug smuggling investigation. Mr. Henke was to retrieve from Colombia and deliver to Mexico a shipment of marijuana. This assignment was part of an effort to apprehend a drug trafficking organization. In exchange, DEA allegedly offered to pay Mr. Henke $250,000. He completed the flight on November 14, 1987. Upon his return to Florida, Mr. Henke requested, but was not paid, the $250,000 fee.

On May 14, 1992, Mr. Henke sued the Government for $250,000 in the United States District Court for the Western District of Virginia. On October 19, 1992, the district court dismissed Mr. Henke's complaint without prejudice and informed him that the Court of Federal Claims was the proper forum for his suit. *Henke v. United States,* Civ. No. 92–0048–C (W.D.Va. Oct. 19, 1992) (order dismissing complaint).

Over a year later, on November 16, 1993, Mr. Henke filed his suit in the Court of Federal Claims. On May 10, 1994, the Court of Federal Claims dismissed Mr. Henke's claim as untimely. *Henke v. United States,* Civ. No. 93–CV–702C (Fed.Cl. May 10, 1994) (order dismissing complaint).

---

5. The matter before us is here on a motion to dismiss. As noted, we take Henke's allegations at face value. Admittedly, the story he alleges is beyond the everyday experience of many, including judges. It is not, however, so incredible as to defy belief. For other, similar tales from the Government crypt, *see The Big White Lie* (Thunder's Mouth Press 1993), by Michael Levine, a former DEA agent and author of an earlier expose entitled *Deep Cover: The Inside Story of How DEA Infighting, Incompetence and Subterfuge Lost Us the Biggest Battle of the Drug War* (Delacorte Press 1990). *See also* Peter Dale Scott and Jonathan Marshall, *Cocaine Politics* (U.Cal.Press 1991); *accord,* almost any daily edition of a daily paper during the heyday of the Government's War on Drugs. The dissent would have us judge whether there really was such a contract, and whether it really was agreed to by an authorized Government official. That is what the trial judge will do on remand. Appellate courts do not do that, even if we had a record upon which to do it. We must decline the dissent's invitation to extend our judicial reach beyond its established limits.

## DISCUSSION

This court reviews the trial court's decision *de novo*. *Transamerica Ins. Corp. v. United States*, 973 F.2d 1572, 1576 (Fed.Cir.1992); *Dehne v. United States*, 970 F.2d 890, 892 (Fed.Cir.1992).

### I.

Mr. Henke did not file his claim with the trial court within the limitations period. The statute of limitations for filing a claim in the Court of Federal Claims is six years from the accrual date. 28 U.S.C. § 2501 (1988 & Supp. V 1993). Accrual occurs when "all events have occurred which fix the government's liability and entitle the claimant to institute an action." *Japanese War Notes Claimants Ass'n v. United States*, 373 F.2d 356, 358, 178 Ct.Cl. 630 *cert. denied*, 389 U.S. 971, 88 S.Ct. 466, 19 L.Ed.2d 461 (1967).

A breach of contract claim accrues, "at the latest," when the contract is "completed." *Mulholland v. United States*, 361 F.2d 237, 239–40, 175 Ct.Cl. 832 (1966). Mr. Henke's claim against the Government therefore accrued, at the latest, when he completed his mission on November 14, 1987. Mr. Henke did not file his claim until November 16, 1993. By that date, the statute of limitations had already expired. The trial court properly dismissed Mr. Henke's claim as untimely.

Mr. Henke raises on appeal, for the first time, the notion that his mission was not complete until a post-operation debriefing that allegedly occurred on November 28, 1987. Like Mr. Henke's claim itself, this argument comes too late to be credited. Courts of appeal generally will not entertain arguments or consider issues raised for the first time on appeal. This court does so only in rare cases to avoid injustice. *See Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1575, 24 USPQ2d 1401, 1415 (Fed.Cir.1992).

This court risks no injustice by refusing to credit Mr. Henke's new assertions, however. Mr. Henke had ample opportunity to raise his allegation before the Virginia district court and the Court of Federal Claims. Yet he made no allegation that he in fact met with the DEA for a debriefing on November 28, 1987. Instead Mr. Henke generally asserted to the trial court in general terms:

if discovery could be had in Plaintiff's case, it would surely point out that a DEA clandestine air operation was not complete for payment purposes until the After-action reports and DEA Form 6s were completed, along with a full debriefing of the air crews and undercover informants.

Plaintiff's Response in Opposition to Defendant's Motion to Dismiss at 2, *Henke v. United States* (Fed.Cl. Feb. 25, 1994) (No. 93–702). Mr. Henke's passing assertion about clandestine air operations in general made no mention of a meeting on November 28, 1987 or any other facts about his alleged post-mission debriefing. Thus, the trial court had no opportunity to address Mr. Henke's belated allegation about events on November 28, 1987.

On appeal, this court "will not find the facts *de novo* " or "fill gaps left by counsel at trial." *Fromson v. Western Litho Plate & Supply Co.*, 853 F.2d 1568, 1570, 7 USPQ2d 1606, 1608 (Fed.Cir.1988). By allowing Mr. Henke to supplement the record with factual allegations about November 28, 1987 at this point, however, this court does both.

On the factual record before the trial court and this court, Mr. Henke completed his mission on November 14, 1987, when he delivered his cargo. His breach of contract claim therefore accrued on November 14, 1987. Mr. Henke did not file his complaint in the trial court until after the six-year statute of limitations had expired. Therefore, the Court of Federal Claims properly dismissed his complaint.

### II.

The record also does not support tolling the limitations period. Equitable tolling may not operate where the failure to timely file springs from a "garden variety claim of excusable neglect." *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 458, 112 L.Ed.2d 435 (1990). The district court dismissed Mr. Henke's suit in October 1992, with specific directions about the Court of Federal Claims' exclusive jurisdiction over the claim. Mr. Henke then wait-

ed nearly thirteen months to file in that court. He has offered no explanation for this delay. Equitable tolling does not apply where the plaintiff does not heed advice to preserve his legal rights. *Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 151, 104 S.Ct. 1723, 1725–26, 80 L.Ed.2d 196 (1984). Mr. Henke's unexplained thirteen-month delay does not deserve the reward of a tolling of the limitations period. Therefore, the trial court properly rejected Mr. Henke's request for tolling.

### III.

The trial court also lacked jurisdiction over Mr. Henke's breach of contract claim. It is incumbent upon this court, in conducting a review *de novo,* to make such a determination *sua sponte.*

For the Court of Federal Claims to have jurisdiction over his claim, Mr. Henke must have had a contractual relationship with the Government. He never did. None of the DEA agents with whom Mr. Henke dealt had authority to bind the Government. DEA agents do not possess the authority to create such obligations. *See Howard v. United States,* 31 Fed.Cl. 297, 313–14 (1994).

Title 28 of the United States Code authorizes appropriations to the Department of Justice (Justice), of which DEA is a part. 28 U.S.C. § 524 (1988 & Supp. V 1993). Title 28 does not grant Justice any funds to hire private citizens to transport illegal drugs. 28 U.S.C. § 524(a). The Department of Justice Assets Forfeiture Fund does permit the Attorney General, at his discretion, to pay a reward to an individual who helps the Government uncover a violation of criminal drug laws. 28 U.S.C. § 524(c)(1)(B), (c)(2). The Attorney General may delegate this authority to the Administrator of the DEA. *Id.* § 524(c)(2). Mr. Henke, however, did not show that he entered into an agreement with an authorized representative of either the Attorney General or the Administrator of the DEA. Instead Mr. Henke urges this court to infer such authorization from his allegation that he dealt with the agent in charge of a regional branch of the DEA. Mr. Henke offers no further evidence of authorization.

Without a showing of proper authority, Mr. Henke could have no contract.

In any event, Mr. Henke did not show either an express or implied-in-fact contract for his services. An implied-in-fact contract with the Government requires: (1) mutuality of intent to contract; (2) lack of ambiguity in offer and acceptance; and (3) authority to bind the Government residing in the officer whose conduct was relied upon. *City of El Centro v. United States,* 922 F.2d 816, 820 (Fed.Cir.1990), *cert. denied,* 501 U.S. 1230, 111 S.Ct. 2851, 115 L.Ed.2d 1019 (1991). At the very least, the third factor was absent. As already noted, Mr. Henke presented no evidence that any of the individuals at DEA with whom he allegedly dealt possessed actual authority to bind the Government. To create a binding implied-in-fact contract with the Government, an agent of the Government must possess actual authority to do so. *Heckler v. Community Health Servs., Inc.,* 467 U.S. 51, 63, 104 S.Ct. 2218, 2225, 81 L.Ed.2d 42 (1984); *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384–85, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947).

Anyone who bargains with the Government takes the risk of having accurately ascertained that the agent purportedly acting for the Government does so within the bounds of his authority. *See Merrill,* 332 U.S. at 384, 68 S.Ct. at 3. Mr. Henke did not ascertain that the DEA agents possessed the requisite authority. Indeed these DEA agents did not possess it.

Because the DEA agents lacked actual authority, Mr. Henke did not have a contract with the Government. The trial court therefore lacked jurisdiction over his breach of contract claim ab initio. Thus, the Court of Federal Claims properly dismissed Mr. Henke's claim, albeit not on jurisdictional grounds.

In sum, the Court of Federal Claims correctly disposed of Mr. Henke's claim. I must respectfully dissent.