# In the United States Court of Federal Claims

No. 12-918T
Filed: July 30, 2013
**TO BE PUBLISHED**

*************************************

|  |  |  |
|---|---|---|
| | * | Full Payment Rule; |
| | * | Informal Claim Doctrine; |
| | * | IRS Form 1040X (Amended U.S. Individual |
| | * | Income Tax Return); |
| | * | IRS Form 1099-OID (Original Issue |
| | * | Discount); |
| BRITTANI NICOLE WILLIAMS, | * | Motion To Dismiss, RCFC 12(b)(1), (6); |
| | * | *Pro Se*; |
| Plaintiff, *pro se*, | * | Tax Refund; |
| | * | 26 C.F.R. § 301.6402-2(b)(1) (IRS regulation |
| v. | * | requiring that tax refund claims detail |
| | * | the supporting grounds and facts); |
| THE UNITED STATES, | * | 26 C.F.R. § 301.6402-3(a)(2) (IRS regulation |
| | * | requiring that tax refund claims be made |
| Defendant. | * | on Form 1040X); |
| | * | 26 U.S.C. § 6532(a)(1) (periods of limitation |
| | * | on suits); |
| | * | 26 U.S.C. § 7304 (fraudulent return penalty); |
| | * | 26 U.S.C. § 7422(a) (disallowing suit prior to |
| | * | filing claim for refund). |

*************************************

**Brittani Nicole Williams,** Houston, Texas, Plaintiff, *pro se*.

**David Raymond House,** United States Department of Justice, Tax Division, Washington, D.C., Counsel for the Government.

## MEMORANDUM OPINION AND FINAL ORDER

**BRADEN,** *Judge*.

# I.    FACTUAL BACKGROUND.[1]

## A.    Plaintiff's Amended Tax Return.

On October 22, 2012, Brittani Nicole Williams ("Plaintiff") mailed an amended tax return for the year 2011 to the Internal Revenue Service ("IRS").  Compl. ¶ 4; Pl. Ex. N (photocopy of Certified Mail receipts evidencing that the amended 2011 tax return was mailed to the IRS).  The amended tax return included a cover letter, listing various tax forms attached to Plaintiff's amended tax return, and a Form 1040X (Amended U.S. Individual Income Tax Return).  Pl. Ex. A (photocopy of the cover letter sent with the amended tax return to the IRS); Pl. Ex. E (photocopy of Form 1040X, dated October 20, 2012).  The October 20, 2012 Form 1040X explains that Plaintiff filed an amended tax return, because she mistakenly filed a Form 1040 (U.S. Individual Income Tax Return) instead of a Form 1040NR (U.S. Nonresident Alien Income Tax Return).  Pl. Ex. E.  The Form 1040X also explains that Plaintiff signed the wrong money orders, leading to incorrect calculations of the tax amount owed for the year 2011.  Pl. Ex. E.  Plaintiff left the section "Refund or Amount You Owe" in the Form 1040X blank.   Pl. Ex. E.

To establish that Plaintiff is a nonresident alien and the beneficial owner, grantor, and executor of the Brittani Nicole Williams Trust (the "Trust"), a nonwithholding foreign grantor trust, Plaintiff attached to the amended tax return: a Form 1040NR (U.S. Nonresident Alien Income Tax Return); a Form W-8BEN (Certificate of Foreign Status of Beneficial Owner for United States Tax Withholding); and a Form W-8IMY (Certificate of Foreign Intermediary, Foreign Flow-Through Entity, or Certain U.S. Branches for United States Tax Withholding).  Pl. Ex. B (photocopy of Form W-8BEN, dated October 20, 2012); Pl. Ex. C (photocopy of Form W-8IMY, dated October 20, 2012); Pl. Ex. F (photocopy of Form 1040NR, dated October 20, 2012).  These forms show Plaintiff's name and address, as well as the Trust's name, including the type of organization and Employer Identification Number.  Pl. Exs. B, C, F.  On the October 20, 2012 Form 1040NR, Plaintiff indicated for the 2011 tax year that: the Trust's income was $0; tax and credits were $0; and federal income tax withheld from Forms W-2 and 1099 was $11,074.87, so that a refund of $11,074.87 was due.  Pl. Ex. F.  On the Form 1040NR, Plaintiff indicated that, although she is a citizen and resident of the United States, she is physically not present in the United States and has no United States immigration status.  Pl. Ex. F.[2]

---

[1] The relevant facts were derived from: the December 28, 2012 Complaint ("Compl.") and exhibits attached thereto ("Pl. Ex. A-Q"); and an exhibit attached to the Government's April 1, 2013 Motion To Dismiss ("Gov't Mot. Ex. 1").

[2] The seeming contradiction in Plaintiff's representing herself as a "nonresident alien," but a citizen and resident of the United States, may be attributed to a misunderstanding of the definition of "nonresident alien."  It appears that Plaintiff understands "nonresident alien" to be a U.S. citizen who does not currently reside in the United States.  Pl. Ex. D (birth certificate showing that Plaintiff was born in Harris County, Texas); *see also* Pl. Ex. F (Plaintiff's Form 1040NR, stating "Not present in U.S. - No U.S. immigration status.").

In support of her contention that $11,074.87 in federal income tax is due for a refund, Plaintiff attached to her amended tax return: four Form 1099-OIDs (Original Issue Discounts),[3] and four bills from creditors to Plaintiff, on which Plaintiff had handwritten the words "Money Order" made payable to the "Department of Treasury, Timothy F. Geithner, Chief Financial Officer of the IMF." Pl. Ex. H (photocopy of Form 1099-OIDs); Pl. Exs. J-M (photocopies of "Money Orders," dated October 1, 2012). Each of the "Money Order" amounts correspond to those indicated on the four Form 1099-OIDs, for a total amount of $11,074.87. Pl. Exs. H, J-M. Also included in the amended tax return was a Form 1096 (Annual Summary and Transmittal of U.S. Information Returns) indicating that Plaintiff submitted four Form 1099-OIDs and a Form 1040-V (Payment Voucher) indicating that Plaintiff paid $11,074.87 by money order to the Chief Financial Officer of the International Monetary Fund. Pl. Ex. J; Pl. Ex. G (photocopy of Form 1040-V, dated October 20, 2012); Pl. Ex. I (photocopy of Form 1096, dated October 20, 2012).

### B. Frivolous Return Penalty.

On December 10, 2012, the IRS sent Plaintiff a Notice of Penalty Charge, assessing Plaintiff a $5,000 penalty under Section 6702(a) of the Internal Revenue Code for filing a frivolous return claim. Pl. Ex. P (photocopy of the Notice of Penalty Charge); Gov't Mot. Ex. 1 (Form 4340 (Certificate of Assessments, Payments, and Other Specified Matters) for Brittani N. Williams, dated March 8, 2013).

On February 4, 2013, the IRS sent Plaintiff a Notice of Intent to Levy. Gov't Mot. Ex. 1. Defendant ("the Government") submitted a Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, for Plaintiff, dated March 8, 2013, as an exhibit to its April 1, 2013 Motion To Dismiss. The March 8, 2013 Form 4340 (Certificate of Assessments, Payments, and Other Specified Matters) indicates that for the year 2011, Plaintiff's tax liability is $0, her frivolous tax return penalty is $5,000, and her remaining balance is $5,000. Gov't Mot. Ex. 1.

## II. PROCEDURAL HISTORY.

On December 28, 2012, Plaintiff filed a *pro se* Complaint in the United States Court of Federal Claims against the United States, as the beneficial owner, grantor, and executor of the Brittani Nicole Williams Trust. Compl. ¶ 1. The December 28, 2012 Complaint alleges that the IRS did not refund money that Plaintiff overpaid and that the IRS apparently did not properly record. Compl. ¶ 7. By refusing to acknowledge that Plaintiff had paid the aforesaid tax, the Government made it look as if it had paid off Plaintiff's portion of the national debt (*i.e.* Plaintiff's tax debt), rather than Plaintiff. Compl. ¶ 9. Therefore, the Government was claiming money that belonged to Plaintiff, for which it owed Plaintiff a refund. Compl. ¶ 11.

On April 1, 2013, the Government filed a Motion To Dismiss ("Gov't Mot."), pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC").

---

[3] Form 1099-OID is intended to record Original Issue Discounts ("OIDs") "includible in gross income." Form 1099-OID, Original Issue Discount, IRS, http://www.irs.gov/uac/Form-1099-OID,-Original-Issue-Discount.

Plaintiff's Response to the Government's April 1, 2013 Motion To Dismiss was due on May 2, 2013. On May 6, 2013, Plaintiff filed a Motion For Extension Of Time Until May 21, 2013 To File Response. The same day, however, Plaintiff also filed an Opposition To Defendant's Motion To Dismiss. On May 7, 2013, Plaintiff's Opposition ("Pl. Opp.") was allowed to be filed, although it was untimely, by leave of the court. On May 23, 2013, the Government filed a Reply ("Gov't Reply").

## III.    DISCUSSION.

### A.    Jurisdiction.

The jurisdiction of the United States Court of Federal Claims is established by the Tucker Act. *See* 28 U.S.C. § 1491 (2006). The Tucker Act authorizes the court "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).

The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages . . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976). Therefore, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, or executive agency regulation that provides a substantive right to money damages. *See Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc) ("The Tucker Act itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages."). The burden of establishing jurisdiction falls on the plaintiff. *See FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990) (holding that the burden is on the plaintiff to present facts sufficient to establish jurisdiction); *see also* RCFC 12(b)(1).

The Tucker Act authorizes the United States Court of Federal Claims to adjudicate tax refund claims if a taxpayer has paid the full assessed federal tax liability and timely filed a refund claim with the IRS stating the grounds for the claim. *See* 28 U.S.C. § 1491(a); 26 U.S.C. §§ 6511(a), 7422(a); *see also Shore v. United States*, 9 F.3d 1524, 1526 (Fed. Cir. 1993) (holding that a tax refund claim must be dismissed if the "principal tax deficiency has not been paid in full"). If the claim is denied by the IRS and the taxpayer timely files suit, the United States Court of Federal Claims has jurisdiction to adjudicate the tax refund claim. *See* 26 U.S.C. § 6532(a); *see also* 28 U.S.C. § 1346(a)(1). The issue of whether the court has jurisdiction over Plaintiff's tax refund claim is discussed more fully below.

**B.      Standards For Decision On Motion To Dismiss.**

**1.      Under RCFC 12(b)(1).**

A challenge to the United States Court of Federal Claims' "general power to adjudicate in specific areas of substantive law . . . is properly raised by a [Rule] 12(b)(1) motion[.]" *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading . . . . But a party may assert the following defenses by motion: (1) lack of jurisdiction over the subject matter[.]"). When considering whether to dismiss an action for lack of subject matter jurisdiction, the court is "obligated to assume all factual allegations of the complaint to be true and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995).

Nonetheless, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question . . . [the plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.").

**2.      Under RCFC 12(b)(6).**

A challenge to the United States Court of Federal Claims' "[ability] to exercise its general power with regard to the facts peculiar to the specific claim . . . is raised by a [Rule] 12(b)(6) motion[.]" *Palmer*, 168 F.3d at 1313; *see also* RCFC 12(b)(6) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading . . . . But a party may assert the following defenses by motion: . . . (6) failure to state a claim upon which relief can be granted[.]").

When considering whether to dismiss an action for failure to state a claim, the court must assess whether "a claim has been stated adequately" and then whether "it may be supported by [a] showing [of] any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). The plaintiff's factual allegations must be substantial enough to raise the right to relief "above the speculative level," accepting all factual allegations in the complaint as true and making all reasonable inferences in favor of the plaintiff. *Id.* at 555.

**C.      Standard Of Review For *Pro Se* Litigants.**

The pleadings of a *pro se* plaintiff are held to a less stringent standard than those of litigants represented by counsel. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that *pro se* complaints, "however inartfully pleaded," are held to "less stringent standards than formal pleadings drafted by lawyers" (citations omitted) (internal quotation marks omitted)). It has been the tradition of this court to examine the record "to see if [a *pro se*] plaintiff has a cause of action somewhere displayed." *Ruderer v. United States*, 412 F.2d 1285, 1292 (Ct. Cl. 1969). Nevertheless, while the court may excuse ambiguities in a *pro se* plaintiff's complaint, the court "does not excuse [a complaint's] failures." *Henke*, 60 F.3d at 799.

**D.     Issues Raised By The Government's April 1, 2013 Motion To Dismiss.**

The April 1, 2013 Motion To Dismiss raises five jurisdictional issues: (1) whether the December 28, 2012 Complaint was filed prematurely; (2) whether Plaintiff's October 22, 2012 amended tax return constituted a valid claim for refund; (3) whether Plaintiff paid tax and the assessed penalty due; (4) whether the December 28, 2012 Complaint states a claim on which relief can be granted; and (5) whether Plaintiff can seek treble damages against the Government under 26 U.S.C. § 7304.  Gov't Mot. at 2.

**1.     Whether The December 28, 2012 Complaint Was Filed Prematurely.**

**a.     The Government's Argument.**

The Government argues that Section 6532(a)(1) of the Internal Revenue Code required Plaintiff to file a tax refund suit at least six months after filing her refund claim with the IRS or after the IRS acted on this claim.  Gov't Mot. at 10 (citing 26 U.S.C. § 6532(a)(1) ("No suit . . . shall be begun before the expiration of 6 months from the date of filing the claim . . . unless the Secretary renders a decision thereon within that time[.]").  Plaintiff, however, filed an amended tax return on October 22, 2012 and the Complaint in this action on December 28, 2012, less than six months after filing the return.  Gov't Mot. at 10-11.  Furthermore, the December 10, 2012 Notice of Penalty Charge was "not a disallowance of any claim for refund," and did not constitute a decision on the claim.  Gov't Mot. at 11.  Therefore, Plaintiff's suit is premature.

**b.     The Plaintiff's Response.**

Plaintiff does not explicitly respond to the Government's argument regarding Section 6532(a)(1).  Plaintiff's May 6, 2013 Opposition, however, presents a different time frame based on an alleged contractual relationship between Plaintiff and the Government.   Pl. Opp. 7-9.  Plaintiff argues that when the IRS imposed the fraudulent tax charge on December 10, 2012, it was tantamount to an offer to borrow Plaintiff's money to pay off its tax obligations.  Pl. Opp. 7.  Plaintiff accepted this offer by filing the December 28, 2012 Complaint, on the condition that the Government prove that Plaintiff did not pay tax, did not file a correct tax return, and cannot claim treble damages under 26 U.S.C. § 7304.  Pl. Opp. at 8.  Moreover, under §§ 226.15 and 226.23, regulations promulgated under the Truth in Lending Act, the Government had until the third business day—January 3, 2013—to respond to Plaintiff's counter-offer.  Pl. Opp. at 9; 12 C.F.R. §§ 226.15, 226.23; Truth in Lending Act, § 105, 82 Stat. 146 (1968) (codified as amended at 15 U.S.C. §§ 1601-1693 (2012)).  The Government responded with silence.  Pl. Opp. at 9.  Thus, on January 4, 2013, the Government agreed to borrow Plaintiff's money to offset its own tax obligations and pay triple the borrowed amount in accordance with 26 U.S.C. § 7304.  Pl. Opp. at 9.

**c.     The Court's Resolution.**

Section 6532(a)(1) of the Internal Revenue Code states:

No suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun *before the expiration of 6 months* from the date of filing the claim required under such section *unless the Secretary renders a decision* thereon within that time, nor after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates.

26 U.S.C. § 6532(a)(1) (emphasis added).

Plaintiff filed the December 28, 2012 Complaint less than six months after filing the October 22, 2012 amended tax return. The only action the IRS took between the time Plaintiff filed the October 22, 2012 amended tax return and the December 28, 2012 Complaint was issuing the December 10, 2012 Notice of Penalty Charge. The Government states that the penalty charge is "not a disallowance of any claim for refund," and Plaintiff has not contradicted this statement. Gov't Mot. at 11. Also, in the court's judgment, there are other issues with Plaintiff's tax filing that may have contributed to the IRS imposing the frivolous return penalty. For example, Plaintiff represented that she was a "non-resident alien" and filed forms in accordance with this status, while at the same time representing that she was a United States citizen. Pl. Ex. E ("I am a nonresident alien not effectively connected with the conduct of a trade or business in the United States."); Pl. Ex. F ("Of what country or countries were you a citizen or national during the tax year? united states of america [sic]"); Pl. Ex. D (Certification of Vital Record showing that Plaintiff was born in Harris County, Texas). In any event, a penalty is not a decision on the merits of a tax refund claim, because a "tax penalty is an addition to tax and should be considered part of the tax liability." *Pac. Gas & Elec. Co. v. United States*, 417 F.3d 1375, 1381 (Fed. Cir. 2005) (citing *Dysart v. United States*, 169 Ct. Cl. 276, 278 n.1 (1965)). Thus, the IRS did not render a decision within the meaning of Section 6532(a)(1) when it sent the Notice of Penalty Charge.

Moreover, Plaintiff's contractual relationship theory is without merit. *See, e.g.*, *Brach v. United States*, 443 F. App'x 543, 547 (Fed. Cir. 2011) (dismissing contract theory applied to a tax refund claim for the purpose of determining subject matter jurisdiction). The IRS's imposition of a fraudulent return penalty and Plaintiff's filing a suit in this court are not an offer and acceptance in the contractual sense, and no plausible reading supports Plaintiff's theory in this regard. Accordingly, the court has determined that it does not have jurisdiction to adjudicate Plaintiff's claim when less than six months elapsed between the filing of Plaintiff's tax refund claim with the IRS and the filing of the Complaint, and the IRS has not yet acted on the claim.

### 2. Whether Plaintiff's October 22, 2012 Amended Tax Return Was A Valid Refund Claim.

#### a. The Government's Argument.

The Government argues that, because Plaintiff did not file a valid claim for refund, this court does not have jurisdiction to adjudicate the tax refund claim alleged in the December 28, 2012 Complaint. Gov't Mot. at 6. An individual cannot file a tax refund suit against the

Government unless a tax refund claim previously has been filed with the Secretary in accordance with "the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof." 26 U.S.C. § 7422(a); *see Chi. Milwaukee Corp. v. United States*, 40 F.3d 373, 374 (Fed. Cir. 1994) (requiring refund claims to comply with IRS regulations as a jurisdictional prerequisite). In addition, IRS regulations require that a tax refund claim detail the grounds and facts that support the claim. *See* 26 C.F.R. § 301.6402-2(b)(1) ("The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof.").

On the October 20, 2012 Form 1040NR, Plaintiff designated $0 for most blanks except where she indicated that she had paid $11,074.87 in tax. Gov't Mot. at 7-8 (citing *Hamzik v. United States*, 64 Fed. Cl. 766, 767 (2005) (filing a zero position return was insufficient to support a refund suit)). As proof of tax payment, Plaintiff submitted four bills addressed to Plaintiff by various creditors, hand-marked as "money orders." Gov't Mot. at 7. These documents, however, do not "set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof," and therefore "will not be considered for any purpose as a claim for refund or credit." 26 C.F.R. § 301.6402-2(b)(1).

### b. The Plaintiff's Response.

Plaintiff responds by stating that the "argument[] go[es] to the merits," which were "addressed . . . at length in [the] original Complaint." Pl. Opp. at 3. The December 28, 2012 Complaint explains why the Plaintiff's claim for refund is valid. The Complaint alleges that Plaintiff sent the IRS Form 1099-OIDs and the money orders to evidence payment. Pl. Exs. H, J-M. These documents establish that Plaintiff paid her portion of the United States' debt, which is synonymous to "public tax debt." Compl. ¶ 9. Since Plaintiff's tax payment was not recorded by the IRS, she is entitled to have the amount of the payment returned in a "tax refund." Compl. ¶¶ 7, 11.

### c. The Court's Resolution.

#### i. Providing Grounds And Facts Sufficient To Support A Tax Refund Claim.

A valid claim for a tax refund must be filed in accordance with IRS regulations. *See* 26 U.S.C. § 7422(a). One such regulation requires that a tax refund claim be filed with grounds and facts sufficient to support the claim. *See* 26 C.F.R. § 301.6402-2(b)(1). The facts needed to determine whether a claim is valid include the amount of tax liability and all tax payments made, since a tax refund, by definition, is the amount paid in excess of tax liability. *See Pac. Gas & Elec.*, 417 F.3d at 1381 ("[T]he refund statute requires that there be an actual overpayment of tax to support a refund."). The December 28, 2012 Complaint, however, did not provide sufficient information of tax liability or tax payments.

In this case, the December 28, 2012 Complaint states that tax debt or tax liability, is "any obligation, debt[,] or bill" of the institution that contributes to the "public debt of the UNITED

8

STATES." Compl. ¶ 9. As a matter of law, however, tax liability is calculated from taxable income using a complex algorithm laid out in statutes and regulations. 26 U.S.C. § 1-1564 (establishing procedures for assessing and collecting income tax); 26 C.F.R. §§ 1.0-1 to 19.3-1 (same). Plaintiff's gross income is not clearly stated, since the October 20, 2012 Form 1040NR reported her income as $0. Pl. Ex. E; *see Hamzik*, 64 Fed. Cl. at 767 (finding from a review of 5th, 6th, 7th, 10th, and 11th Circuit cases that "a return which lacks essential financial information and, in particular, contains no recitation of taxpayer's income, is not a properly executed return for purposes of the tax laws," and concluding that plaintiff did not file a properly executed return because his Form 1040 was "replete with zeroes" and thus "failed to include any reliable information upon which the IRS could accurately calculate his taxes").

As to tax payments, the December 28, 2012 Complaint alleges that Plaintiff paid tax in the amount of $11,074.87. Pl. Ex. E. As proof of tax payment, Plaintiff attached four Form 1099-OIDs and corresponding "money orders" to the Complaint. Pl. Exs. H, J-M. The alleged money orders were not legitimate proof of payment as they could not have functioned as payment. *See* Pl. Exs. H, J-M (showing that the word, "Money Order" was handwritten); *cf. Morey v. Doud*, 354 U.S. 457, 460 (discussing Illinois' requirements for issuing money orders). In any event, the amounts indicated on the alleged money orders were not the amount of tax due, but the amount that was charged to Plaintiff by various creditors in the year 2011. Pl. Exs. J-M. Finally, Form 1099-OIDs cannot be evidence of tax payment. *See United States v. McIntyre*, 715 F. Supp. 2d 1003, 1006 (C.D. Cal. 2010) (describing Form 1099-OIDs as reporting OID income, which in itself cannot prove tax payment).

In sum, the court has determined that Plaintiff failed to provide evidence of income or the amount of tax paid, did not comply with IRS regulations, and therefore did not file a valid claim for refund.

### ii. Filing A Formal Claim.

Another regulation governing the validity of a refund claim requires that, "[i]n the case of an overpayment of income taxes for a taxable year of an individual for which a Form 1040 or 1040A has been filed, a claim for refund shall be made on Form 1040X." 26 C.F.R. § 301.6402-3(a)(2). Although Plaintiff filed a Form 1040X, she did not fill out the "Refund or Amount You Owe" section. Pl. Ex. E. Thus, Plaintiff did not follow the formal procedures required to make a refund claim to the IRS. There are, however, four recognized exceptions to the formal claim requirement, only one of which, the informal claim doctrine, is even plausible in this case.[4] The

---

[4] The other exceptions are: the waiver doctrine, the general claim doctrine, and the germaneness doctrine. *Computervision Corp. v. United States*, 445 F.3d 1355, 1364-70 (Fed. Cir. 2006). The waiver doctrine applies if "the IRS considers th[e] specific claim within the limitations period." *Id.* at 1365. The general claim doctrine applies where "(1) the taxpayer has filed a formal general claim within the limitations period; and (2) an amendment is filed outside the limitations period that makes the general claim more specific." *Id.* at 1368. The germaneness doctrine only applies where the taxpayer "(1) files a formal claim within the limitations period making a specific claim;" and "(2) after the limitations period but, while the IRS still has jurisdiction over the claim, files a formal amendment raising a new legal theory—

9

October 20, 2012 Form 1040NR states that Plaintiff should be refunded $11,074.87, which provided the IRS with notice that Plaintiff was seeking a refund. Pl. Ex. F. But the informal claim doctrine requires that the refund claim "fairly apprise[] the IRS of the basis for the claim within the limitations period." *Computervision Corp.*, 445 F.3d at 1364. Here, Plaintiff's refund claim was insufficient, as it provided no "basis" for the refund claim. For this additional reason, the court has determined that Plaintiff's claim for refund was not valid.

### 3. Whether Plaintiff Paid The Tax And/Or The Frivolous Return Penalty.

#### a. The Government's Argument.

Next, the Government argues that even if Plaintiff's refund claim were valid, the court does not have jurisdiction to adjudicate Plaintiff's claim, because there is no evidence that she paid any tax or the frivolous return penalty. Gov't Mot. at 8-9. Plaintiff submitted Form 1099-OIDs to evidence payment of federal income taxes, but this form is used "to report OID income and any federal income tax withheld from that income," not to establish payment of taxes due. Gov't Mot. at 7 n.2 (quoting *McIntyre*, 715 F. Supp. 2d at 1006). Therefore, Plaintiff has not proffered any evidence to show that she has paid her income tax for the year 2011. Gov't Mot. at 9. As such, the court does not have jurisdiction to adjudicate Plaintiff's claims regarding the frivolous return penalty. Gov't Mot. at 9; *see Shore*, 9 F.3d at 1526 (holding that full payment of underlying tax was required to supply the court with jurisdiction over claims regarding interest and penalties resulting from that liability). Even assuming that Plaintiff did pay the underlying tax, she would have to pay the frivolous return penalty since she "has affirmatively put the frivolous return penalty before the [c]ourt." Gov't Mot. at 10.

#### b. The Plaintiff's Response.

Plaintiff responds by stating that the "argument[] go[es] to the merits," which were "addressed . . . at length in [the] original Complaint." Pl. Opp. at 3. The December 28, 2012 Complaint explains why Plaintiff believes that she paid the underlying tax and should not have to pay the frivolous return penalty. The Complaint alleges that the Form 1099-OIDs and the money orders prove that Plaintiff paid tax. Pl. Exs. H, J-M. By not recording these documents in its bookkeeping, and claiming that Plaintiff did not pay any tax, the IRS is committing fraud. Compl. ¶¶ 7, 11. In addition, Plaintiff should not have to pay the frivolous return penalty since the charge "is a failure of the [Government] to pay Plaintiff-Claimant's tax obligations" rather than an indication of Plaintiff's faults. Compl. ¶ 9. "There was never a frivolous tax return." Compl. ¶ 9.

---

not specifically raised in the original claim—that is 'germane' to the original claim, that is, it depends upon facts that the IRS examined or should have examined within the statutory period while determining the merits of the original claim." *Id.* at 1370. The court has determined that none of these exceptions applies in this case.

### c. The Court's Resolution.

The full payment rule, adopted by our appellate court, "requires full payment of the assessment before an income tax refund suit can be maintained." *Shore*, 9 F.3d at 1526 (quoting *Flora*, 357 U.S. at 177). "[A]ssessment" has been understood as the amount of tax principle, notwithstanding the interest and penalties. *Id.* at 1527. Plaintiff's Form 4340 indicates that Plaintiff's tax liability for the year 2011 is $0 and that Plaintiff has not paid any amount of tax. Gov't Mot. Ex. 1. Since Plaintiff is claiming that she is owed $11,074.87 in tax refund, the burden is on Plaintiff to show that she has paid that tax. *See Union Pac. R.R. Co., Inc. v. United States*, 208 Ct. Cl. 1, 46 (1975) ("Plaintiff has the burden of proof when it undertakes to show otherwise than is said in its books.").

Although Plaintiff proffered Form 1099-OIDs and the alleged money orders, these documents do not provide sufficient evidence of payment. A Form 1099-OID cannot be used to establish tax payment, as that form is used solely to report original issue discount income and related withholding. *See McIntyre*, 715 F. Supp. 2d at 1007 ("[Form 1099-OIDs are used] to report OID income and any federal income tax withheld from that income."). Likewise, the alleged money orders that Plaintiff submitted with the Form 1099-OIDs do not establish payment, since money orders must be issued by certified institutions, such as the Postal Service. Personal, hand-written notes promising to pay off debt are not valid money orders.

As for the frivolous return penalty, the United States Court of Appeals for the Federal Circuit has held that "[o]nly if the taxpayers assert a claim over assessed interest or penalties on grounds *not fully determined* by the claim for recovery of principal must they prepay such interest and penalties as well as the assessed tax principal." *Shore*, 9 F.3d at 1527-28 (emphasis included). The December 28, 2012 Complaint alleges a claim over the penalty that is "not fully determined" by the refund claim since the claim regarding the penalty is based on the Government's "willful and malicious intent to evict and penalize" for filing a frivolous tax return while the refund claim is based on a showing of tax payment in excess of tax liability. Compl. ¶¶ 8, 10. Even if the claim over the penalty were "fully determined" by the claim for recovery of tax principal, the court must have jurisdiction to adjudicate the underlying tax refund claim, as a prerequisite for adjudicating the claim over the penalty. Since Plaintiff did not pay the underlying tax, the court does not have jurisdiction to adjudicate the penalty claim.

For these reasons, the court has determined that it does not have jurisdiction to adjudicate either the tax refund or the penalty claim alleged in the December 28, 2012 Complaint.

### 4. Whether Plaintiff Has Stated A Claim Upon Which Relief Can Be Granted.

### a. The Government's Argument.

The Government argues, in the alternative, that Plaintiff has not stated a claim upon which relief can be granted. Gov't Mot. at 11 (citing RCFC 12(b)(6)). To survive a Motion To Dismiss, a Complaint must include enough facts to "state a claim to relief that is plausible on its face." *United Surety & Indem. Co. v. United States*, 87 Fed. Cl. 580, 587 (2007) (citing *Twombly*, 550 U.S. at 570). If pleadings are "no more than conclusions, [they] are not entitled to

the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). Not only did Plaintiff indicate a zero return position on her amended tax return, but she claimed a tax refund for payments she had allegedly made to the Chief Financial Officer of the International Monetary Fund. Gov't Mot. at 12. Plaintiff has "failed to set forth any facts that show that relief can be granted." Gov't Reply at 4. Furthermore, Plaintiff's "complaint and opposition are full of bizarre references to [an alleged contractual relationship with the IRS]" and "it is impossible to determine just what [P]laintiff is contending." Gov't Reply at 4; Gov't Mot. at 12 n.5.

### b. The Plaintiff's Response.

In response, Plaintiff asserts that to succeed on a Motion To Dismiss, the Government must demonstrate "beyond doubt that the Plaintiffs can prove no set of facts in support of their claim that would entitle them to relief." Pl. Opp. at 5 (quoting *Flood v. New Hanover Country*, 125 F.3d 249, 251 (4th Cir. 1997)). The court must "accept the factual allegations in the Plaintiff's complaint and must construe those facts in the light most favorable to the Plaintiffs." Pl. Opp. at 5 (quoting *Flood*, 125 F.3d at 251).

### c. The Court's Resolution.

In applying both RCFC 12(b)(1) and 12(b)(6), the court must "assume all factual allegations of the complaint to be true and . . . draw all reasonable inferences in plaintiff's favor." *Henke*, 60 F.3d at 797. Even if the court assumes that Plaintiff's factual submissions regarding her Form 1099-OIDs and money orders are true, however, Plaintiff still has not pled sufficient facts to support a reasonable inference that she is owed a tax refund.

The Government has directed the court's attention to Plaintiff's October 20, 2012 Form 1040NR, which indicates that Plaintiff's income for the year 2011 was $0, and to her Form 4330, which indicates that Plaintiff's tax balance for the year 2011 is $5,000 in penalties. *See* Pl. Ex. E; Gov't Mot. Ex. 1. These two facts create a presumption that Plaintiff has not paid tax in excess of her tax liability, if she has paid at all, making her ineligible to claim a tax refund. Plaintiff has not overcome this presumption. *See Jibilian v. United States*, 174 F. App'x. 576, 578 (Fed. Cir. 2006) (finding that the plaintiff did not state a claim upon which relief could be granted since the plaintiff was not able to overcome the presumption that the IRS complied with 26 U.S.C. § 6203).

Since Plaintiff fails to set forth any facts entitling her to relief, the court has determined that Plaintiff has not stated a claim upon which relief can be granted.

### 5. Whether Plaintiff Can Seek Treble Damages Under 26 U.S.C. § 7304.

### a. The Government's Argument.

The Government argues that Plaintiff cannot seek treble damages pursuant to 26 U.S.C. § 7304. Gov't Mot. at 5. Section 7304 causes "any person fraudulently claim[ing]" a refund to "forfeit triple the amount wrongfully or fraudulently claimed . . . at the election of the Secretary [of the Treasury]." 26 U.S.C. § 7304. Thus, the Section allows for the Secretary to assert treble damages against individual claimants, not for individuals to assert treble damages

12

against the Government. Gov't Mot. at 6; Gov't Reply at 3. The court does not have jurisdiction over Plaintiff's suit for treble damages against the Government under 26 U.S.C. § 7304. Gov't Mot. at 6.

### b.    The Plaintiff's Response.

Plaintiff responds that 26 U.S.C. § 7304 does cover individuals' suits against the Government. Pl. Opp. at 7. The provision reads that "any person fraudulently claim[ing] [a refund] shall forfeit triple the amount[.]" Pl. Opp. at 7 (quoting 26 U.S.C. § 7304). The Government, in its capacity as a taxpayer, has fraudulently claimed that it has paid Plaintiff's tax obligations, when Plaintiff has already sent to the IRS proof that she has paid tax. Pl. Opp. at 8. The IRS has not recorded in its bookkeeping Plaintiff's Form 1099-OIDs and money orders proving that Plaintiff has paid her debt, and thus her tax debt. Compl. ¶ 9. By concealing receipt of such proof, the Government effectively "wrongfully and fraudulently claimed" Plaintiff's tax payment. Compl. ¶ 15. Thus, the Government is an entity whose actions are subject to treble damages under 26 U.S.C. § 7304. *See* Pl. Opp. at 7.

### c.    The Court's Resolution.

To the extent that the court reads the December 28, 2012 Complaint as asserting a separate treble damages claim based on the Government's actions in "*wrongfully and fraudulently* claim[ing]" Plaintiff's tax payment amount, the court finds it does not have jurisdiction over this claim. Compl. ¶ 15 (emphasis added); *see* 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction . . . in cases not sounding in tort."); *Aetna Cas. & Sur. Co. v. United States*, 655 F.2d 1047, 1059 (Ct. Cl. 1981) ("Tort claims, of course, are expressly beyond our Tucker Act jurisdiction.").

Furthermore, the court finds that it does not have jurisdiction over Plaintiff's treble damages claim insofar as it relates to the underlying refund claim. Section 7304 of the Internal Revenue Code states:

> Whenever *any person* fraudulently claims or seeks to obtain an allowance of drawback on goods, wares, or merchandise on which no internal tax shall have been paid, or fraudulently claims any greater allowance of drawback than the tax actually paid, he shall forfeit triple the amount wrongfully or fraudulently claimed or sought to be obtained, or the sum of $500, at the election of the Secretary.

26 U.S.C. § 7304 (emphasis added).

"[A]ny person" in this provision does not refer to the United States Government since "tax" is, by definition, money that a non-governmental entity forfeits to the Government. *See* 26 U.S.C. § 7701(a)(1) ("The term 'person' shall be construed to mean and include an individual, a trust, estate, partnership, association, company or corporation."). The Government can only be on the receiving end in taxation. *See id.* Since the Government can never be required to pay taxes, it can never fraudulently seek a drawback, the action that would cause a person to forfeit

triple the drawback amount. Therefore, Plaintiff cannot assert treble damages against the Government pursuant to 26 U.S.C. § 7304 in relation to her tax refund claim.

For these reasons, the court has determined that it does not have jurisdiction to adjudicate Plaintiff's treble damages claim against the Government under 26 U.S.C. § 7304.

## IV. CONCLUSION.

For the reasons discussed herein, the Government's April 1, 2013 Motion To Dismiss is granted. *See* RCFC 12(b)(1) and (6). Accordingly, the Clerk of the Court is directed to dismiss Plaintiff's December 28, 2012 Complaint.

**IT IS SO ORDERED.**

        _____
        **SUSAN G. BRADEN**
        **Judge**